# CLAUDIUS SMITH, Plaintiff

## v.

# INES CEDANO, Defendant

Family No. C26/1987

Territorial Court of the Virgin Islands

Div. of St. Croix

May 5, 1988

ESZART A. WYNTER, ESQ., St. Croix, V.I., *for plaintiff*

ALLAN A. CHRISTIAN, St. Croix, V.I., *for defendant*

11

ELTMAN, *Judge*

## MEMORANDUM OPINION

This case involves the custody of an infant, Gloria Doris Smith, born May 4, 1987. At issue is whether the best interests of the child require that she remain with her mother, Ines Cedano, or whether she should be placed in the custody of her natural father, Claudius Smith. The Court has jurisdiction to decide this matter pursuant to 4 V.I.C. § 173(d).

### FACTS

Gloria Doris Smith is one year old. At the trial of this matter on April 8, 1988, the child appeared healthy, alert and well cared for. Her parents are not married to one another and the nature of their relationship is in some dispute. The plaintiff claims that he met the defendant while she was working as a prostitute in Frederiksted, that he initially paid her for her sexual services, and that they later became personally involved and continued their liaison on a noncommercial basis. The mother, on the other hand, insists that she has never engaged in prostitution and states that she became involved with the plaintiff while she was working as a barmaid.

The child presently lives in the home of the godmother, Irose Spooner, along with the defendant's three-year-old son, Javier. The plaintiff contends that the mother is there only rarely and is not actually living with the child. The defendant claims that she resides with Mrs. Spooner and Gloria on a full-time basis and is waiting to get her own apartment through the Department of Housing. It is not disputed, however, that, several months after Gloria was born, the defendant placed the baby in the care of Mrs. Spooner while the defendant herself continued to live in a small room behind a bar in Frederiksted, which was unsuitable for the child because it was rat-infested. According to the defendant, sometime thereafter she also moved in with Mrs. Spooner, where, with the exception of some time spent on St. Thomas, she has since remained. During the period when Ms. Cedano was on St. Thomas, which apparently was more than a month, Mrs. Spooner took Gloria and Javier with her to St. Kitts.

The defendant has three other children. Javier has lived with his mother for most of his life, except when he was placed first with a friend of his mother and then, like Gloria, with Mrs. Spooner

while his mother lived in the small room at the bar and then while she was off-island. Jose Alejandro, who is five, has been living with relatives in the Dominican Republic for the past nine months. The defendant testified that she sent him there because she did not have a place to live. The eldest of the defendant's four children, Rudy, who is nine, has lived with his maternal grandmother on St. Croix since he was a baby. Ms. Cedano placed him there because, as she describes it, her mother never had a grandson. Ms. Cedano is presently unemployed. She has worked in perfume stores and as a barmaid in various establishments. Despite what the Department of Human Services has described as her "nomadic" existence, there is no evidence that Gloria or any of the other children have been maltreated while in the defendant's care.

Claudius Smith, 39, lives in a three bedroom home with his wife Lydia. He is employed as a foreman at Industrial Maintenance Corporation and earns approximately $500.00 a week. There are no other children in the home, although Mrs. Smith has two grown children by a previous marriage. Mr. Smith works varying shifts and claims that he would be at home at least part of the time to care for the child. His wife is a beautician and is developing a business out of her home. She testified that she loves the child and is able to care for her.

The father's interest in Gloria is not new. He arranged for housing for the mother when pregnant, but he discontinued paying the rent because, as he describes it, she was using the apartment for prostitution. The mother claims that Mrs. Smith disapproved and insisted that her husband stop paying the rent. Although the plaintiff has not seen his daughter for several months because visitations have been obstructed and because the child was on St. Kitts, he used to see Gloria about three times a week and has regularly provided support for her.

## DISCUSSION

It is well settled that the natural parents of a child have co-equal rights to custody. Hugo v. Hugo, 430 A.2d 1183 (Pa. 1981); In the Matter of Baby M, --- A.2d ---, 14 Family Law Reporter 2007. While a finding of unfitness against one parent may be the basis for a custody award, Dalton v. Dalton, 522 P.2d 378 (Kan. 1974), where there is no showing of unfitness or, conversely, where both parents are deemed fit, the inquiry then becomes which parent can better nurture the child, i.e., which placement is in the best

13

interests of the child. Hodge v. Hodge, 13 V.I. 561 (D.V.I. 1977). An important consideration in determining the best interests is the home environment offered by each parent. Rogers v. Rogers, 14 V.I. 130 (Terr. Ct. St.T.-St.J., 1977).

■ Unlike a child protective proceeding in which the Government has the burden of proving its allegations by clear and convincing evidence, 5 V.I.C. § 2548, here the balance is different. In a private custody action between the natural parents, the plaintiff has the traditional civil burden of proof, i.e., preponderance of the evidence. Cookson v. Cookson, 514 A.2d 323 (Conn. 1986).

Although its vitality is steadily diminishing over time, the tender years presumption, that a small child should be with his or her mother, is difficult to ignore entirely. The Court acknowledges an almost reflexive tendency to adhere to that doctrine where, as here, the child is so young. However, in Hodge v. Hodge, supra at 569, the District Court noted:

> The presumption assumes that children of tender years more properly belong with their mother because she can more adequately fulfill what might be considered the mother's role, i.e., providing the physical, emotional and psychological nurturing that a working father is not able to provide. When the evidence is to the contrary, the presumption must fail.

Although the plaintiff places great weight on the alleged prostitution by the defendant, it is not necessary to make a finding as to whether or not that assertion is true. First, there is no evidence as to how, if at all, such alleged activities have impacted upon the child. Second, it is hypocritical for the plaintiff to suggest that Ms. Cedano is immoral, or less fit than he to be a parent, because she has sold her sexual favors, whereas Mr. Smith, who bought those favors, should be free from any judgment or opprobrium.

What is relevant, however, in terms of Gloria's best interests, is the financial instability of the defendant, her "nomadic" lifestyle and, most significant, the fact that she already has voluntarily relinquished the custody of two of her four children. Moreover, she previously has given temporary custody of Gloria and Javier to Irose Spooner while she remained living in a room at the rear of the bar where she was employed. There is no evidence that the defendant could not have moved into the Spooner home when she first placed her children there. Instead, she chose to live apart from

them. Even if she actually lives with her children now, the Court finds as a fact that Mrs. Spooner has been and continues to be Gloria's primary custodian.

The mother's present housing situation may shortly change if she receives an apartment in a public housing facility; although it is claimed to be imminent, the time when that will occur is uncertain. However, it seems safer to base a custody decision more on previous and current circumstances rather than on future possibilities. The mother's history is unsettled and the environments in which she has lived have been insecure. The father, on the other hand, while he is no more a paragon of morality than what he claims the defendant is, nevertheless can provide a steady and apparently sound environment in which to rear a child. He is gainfully employed, has adequate housing and, with his wife, is able to provide a stable home for Gloria.

■ Emphatically, the result in this case does not spring from the poverty of the mother, nor does it disregard the observation that in Caribbean cultures children are commonly and successfully reared outside of a nuclear family. In resolving a custody dispute, however, a court must select, as between disparate environments, the one which is more likely to provide a secure, comfortable and predictable future. "'Best interests' does not contain within it any idealized lifestyle; the question boils down to a judgment, consisting of many factors, about the likely future happiness of a human being." In the Matter of Baby M, supra at 14 FLR 2024.

■ In this instance, the best interests of Gloria Doris Smith require that she be placed in the custody of her natural father, with reasonable visitation by her mother. The parties are encouraged to agree on the specific terms of such visitation. If they are unable to agree, the Court will establish a schedule upon the request of either party.

## CUSTODY DECREE

In accordance with the memorandum opinion of even date, it is hereby

ORDERED, ADJUDGED, and DECREED that custody of the minor Gloria Doris Smith is awarded to the plaintiff, Claudius Smith, subject to reasonable visitation by the defendant, Ines Cedano. The terms of visitations including the dates, times, and places thereof, shall be arranged between the parties. If they are

15

unable to agree on the terms of visitation, the Court will decide the issue upon the motion of either party.