**DELMA MADIR, Appellant/Defendant**

**v.**

**MATTHIAS DANIEL, for himself and minor, KIMANI KIRON DANIEL, Appellee/Plaintiff**

S. Ct. Civ. No. 2008-0012

Supreme Court of the Virgin Islands

June 24, 2010

CLIVE RIVERS, ESQ., St. Thomas, USVI, *Attorneys for Appellant.*

BERNARD M. VANSLUYTMAN, ESQ., St. Thomas, USVI, *Attorney for Appellee.*

HODGE, *Chief Justice*; CABRET, *Associate Justice*; SWAN, *Associate Justice.*

## OPINION OF THE COURT

(June 24, 2010)

CABRET, J. Delma Madir appeals from a Superior Court judgment awarding permanent physical custody of her child, Kimani Daniel, to Kimani's father, Matthias Daniel. Madir asserts that the Superior Court erred in failing to consider the best interests of the child and in refusing to appoint separate counsel for Kimani at the custody hearing. For the reasons which follow, the Superior Court's order will be affirmed.

## I. FACTS AND PROCEDURAL BACKGROUND

The record shows that Madir and Daniel are the natural parents of Kimani, who was born on May 6, 2001. When Kimani was born, Madir had four other children. The record does not disclose whether Daniel was the father of any of those four children, whether Madir and Daniel were married at the time of Kimani's birth, nor whether the two parents were living together when Kimani was born. In October of 2003, while Kimani was living with Madir on St. Thomas, Madir decided to move to New Jersey, and she left Kimani on St. Thomas to live with Daniel.[1] Explaining her reasons for leaving Kimani behind, Madir stated: "I told the father to hold him for me until I get to New Jersey and get a job and

---

[1]    Madir also left one of her other children on St. Thomas to live with an aunt.

a place and then I'll come back for him." (App. 13.) According to Daniel, when Madir left St. Thomas for New Jersey, he and Madir had not discussed where Kimani would live in the future, and he believed that "[s]he would go and [he] would keep Kimani Daniel." (App. 78.)

Madir next saw Kimani when she visited St. Thomas for two weeks in February, 2004. In August, 2005, Madir again returned to St. Thomas and took Kimani with her back to New Jersey where he remained until August, 2006. According to Daniel, he agreed to allow Madir to take Kimani to New Jersey for a short time so that Kimani could become better acquainted with his mother. But, Daniel maintained, he purchased a round-trip ticket for Kimani to return to St. Thomas in October, 2005, and Madir gave him "all kinds of excuses" as to why Kimani could not return at that time. (App. 60.)

In August, 2006, Madir brought Kimani to Puerto Rico, where she met Daniel and gave Kimani to him. Although Madir stated that she had intended for Daniel to return Kimani to her in New Jersey at the end of the summer, Kimani remained with Daniel on St. Thomas until August, 2007.[2] At that time, Madir went to St. Thomas for ten days. During her visit, Madir asked Daniel if she could take Kimani with her back to New Jersey, but Daniel denied her request. Nevertheless, at the end of her visit Madir took Kimani with her to New Jersey without Daniel's permission.

On August 15, 2007, Daniel filed a petition in the Superior Court for permanent physical custody of Kimani, and he requested an expedited hearing on the matter. In his petition, Daniel asserted that it was being filed on his own behalf, and that he was also filing it on behalf of his minor child, Kimani. The Superior Court scheduled hearings on the petition for November 7, 2007, and November 14, 2007, but Madir did not attend either of those hearings. At a third hearing, scheduled for January 2, 2008, Madir and Daniel appeared and were represented by counsel. When the January 2, 2008 hearing commenced, Madir moved the court to strike Kimani as a party in the action. Madir did not assert any grounds for her motion, but the judge responded that while Daniel purported to represent his own interests and Kimani's interests, the court

---

[2]     Madir also stated that while she had purchased a one-way ticket for Kimani to return to New Jersey in December of 2006, Daniel never picked up the ticket from the airport and Kimani never made the trip.

considered Daniel's representation of Kimani's interests to be "just semantics." (App. 3.)

The court then proceeded to update Madir and her attorney about the two prior hearings the court scheduled in the case. The first hearing, the judge explained, was scheduled for November 7, 2007, but was cancelled because Madir had recently changed addresses in New Jersey and had not, therefore, been served with notice of the hearing. The judge further explained that, when the court confirmed that Madir had been served with notice of the second hearing, which was scheduled for November 14, 2007, it conducted what the judge described as a "full-blown hearing" on that date. (App. 4.) Unbeknownst to the court, however, before the second hearing commenced, Madir had faxed a letter to the clerk's office explaining that she could not attend the hearing because she received the notice too late to make travel arrangements. According to the judge, at the time the court learned of the letter, it "had already heard testimony from Mr. Daniel, . . . and the Court had pretty much made a determination out of an abundance of caution." (App. 5.) Although the court had prepared an order which apparently awarded custody of Kimani to Daniel based on that hearing, the court did not enter the order, but instead sent out another order scheduling the January 2, 2008 hearing. Because Madir was absent from the prior proceedings, but present at the January 2, 2008 hearing, the judge told the parties that she considered the court's earlier determinations "moot." (App. 5.)

After informing Madir about these earlier proceedings, and attempting to resolve the issues amicably, the court heard testimony from both Madir and Daniel. In addition to recounting the facts discussed above, Madir stated that at the time of the hearing she was living in New Jersey in a five bedroom home that she had purchased with her boyfriend. Madir was living in the home with her boyfriend, her five children who were ages six to fifteen and included Kimani, her sister, and her sister's family, which included three additional children. According to Madir, Kimani, who was six years old at the time, had a good relationship with the other children living in the home, and was doing well in school attending the first grade. Madir had a full-time job and a part-time job, both at elderly assisted living facilities.

Daniel testified that he was employed in construction and living in a two-story home he built on St. Thomas. Before Madir took Kimani to New Jersey, Daniel lived with Kimani in a two-bedroom apartment in the

downstairs of the home, and his sister rented the upstairs part of the home. Daniel testified that Kimani had two brothers living on St. Thomas, ages twenty-nine and twenty-seven. Daniel had Kimani enrolled in school, and with the assistance of Kimani's grandmother and aunt, he cared for the child.

After Daniel testified, Madir's attorney asked that Kimani, who was not present in the courtroom, be called in to testify. The court denied the request on the ground that Kimani was only six years old and because the judge had already spoken with him in her chambers. During a further colloquy with counsel, the judge mentioned that "[n]ormally, in situations like this, there's some kind of a home study" (App. 94), but the court did not order a home study, the parties never requested one on the record, and neither party objected when the judge ruled that "there will be no home study." (App. 95.)

After further arguments by the parties concerning the best interests of Kimani, the court concluded the proceedings and stated that it would put its findings of fact and conclusions of law on the record the next day. When the court announced its findings and conclusions, the judge stated that, in determining Kimani's best interests, she had considered the "home environment, nurturing by both parents[, w]hether or not there was any abuse or neglect, . . . the presence of the parent in the home, . . . who else may be present in the home, . . . [and] anyplace where the child spends time for one reason or the other." (Hr'g Tr. 10-11, Jan. 3, 2008.) The court found that there had "been no accusation of abuse or neglect"[3] and that each of the home environments were, "for the most part . . . pleasant[,] . . . positive[,] . . . [and] nurturing." (Hr'g Tr. 11.) (Footnote added). In fact, the only fault the court found with either parent's ability to nurture Kimani was "their inability to come together as parents and make a decision which would be in the best interest of their child." (Hr'g Tr. 12.) Although Kimani had siblings living with him in Madir's home

---

[3] We note that although neither party alleged any abuse or neglect before the Superior Court, on appeal Madir asserts, without any citation to the record, that Daniel was, in the past, guilty of such conduct towards a different child. Madir's unsupported assertion violates Rules 22(d) of the Supreme Court Rules, and under the circumstances presents troubling questions concerning the professional conduct of Madir's counsel. While we will not, on this occasion, delve into our obvious concerns with counsel lodging such serious unsupported accusations against an opposing party, we remind counsel of his professional obligations as a member of the Bar and caution him that such conduct will not be tolerated in future cases.

and not Daniel's home, the court did not find this fact decisive because, as the judge stated, "there are still in our world today, so many ways in which siblings can come together." (Hr'g Tr. 13.) In sum, the judge stated that she "found the factors and the elements to be almost even." (Hr'g Tr. 13.)

Having found that most of the best interests criteria weighed equally in favor of both parents having custody, the court focused its attention on the fact that, as a result of the parents' inability to agree on who would have custody of Kimani, the child was "moved back and forth for most of his young life." (Hr'g Tr. 7-8.) In addressing these circumstances, the judge found

> [t]hat at the outset when Kimani was at a tender age, Mr. Daniel, although he had no support at the time, elected to keep his son Kimani and take care of him during the time that Ms. Madir elected to relocate to New Jersey for whatever reason. I have found no reason why Kimani should have been taken from his father in the first place. His father has been a fit parent throughout the time that he was taken [sic] care of his son.

(Hr'g Tr. 14.) Although Daniel, the court found, had allowed Kimani to leave St. Thomas with Madir on occasion, "it was just for a visit" and with the understanding that "Kimani would return for school." (Hr'g Tr. 15.) In the end, the judge stated: "I applaud Mr. Daniel for putting a stop to the back and forth with respect to Kimani and finally seeking out legal counsel instead of continuing to use self help as bolt [sic] parents were doing which would only have continued to be to Kimani's detriment." (Hr'g Tr. 16.)

Based on these considerations, the court concluded that it would be in Kimani's best interests to grant permanent physical custody of the child to Daniel. In its order, the court granted both parties joint legal custody and provided Madir with visitation rights.

Madir filed this appeal asserting that the Superior Court abused its discretion because it "arbitrarily" granted custody of Kimani to Daniel in "total disregard" of the child's best interests. (Appellant's Br. V.) Madir also asserts that the Superior Court abused its discretion by failing to appoint separate counsel to represent Kimani at the custody hearing.

## II. JURISDICTION AND STANDARD OF REVIEW

We have jurisdiction over this appeal pursuant to title 4, section 32(a) of the Virgin Islands Code, which vests the Supreme Court with

jurisdiction over "all appeals arising from final judgments, final decrees, [and] final orders of the Superior Court."[4] In considering Madir's appeal, our standard of review is as follows:

> The standard of review for this Court in examining the Superior Court's application of law is plenary. Findings of fact are reviewed on appeal under a clearly erroneous standard of review. The appellate court must accept the factual determination of the fact finder unless that determination either (1) is completely devoid of minimum evidentiary support displaying some hue of credibility, or (2) bears no rational relationship to the supportive evidentiary data.

*St. Thomas-St. John Board of Elections v. Daniel*, 49 V.I. 322, 329 (V.I. 2007) (citations and quotation marks omitted). Like other appellate courts, we review the Superior Court's custody determination for an abuse of discretion. *See Wee v. Eggener*, 225 P.3d 1120, 1124 (Alaska 2010); *Hurd v. Hurd*, 223 Ariz. 48, 219 P.3d 258, 261 (2009); *Collins v. Collins*, 117 Conn. App. 380, 979 A.2d 543, 553 (2009); *Cramer v. Zgela*, 2009 PA Super 60, 969 A.2d 621, 625 (2009); *Kreps v. Kreps*, 2010 SD 12, 778 N.W.2d 835, 843 (2010); *see also generally*, 27C C.J.S. *Divorce* § 983 (West Update 2009) (citing cases from twenty-two states for the proposition that courts are vested with broad discretion in determining the best interests of children in custody proceedings); Child Custody Prac. & Proc. § 14:27 (2007) (stating that more than thirty states apply an abuse of discretion standard in reviewing child custody proceedings).

---

[4] We note that in the proceedings below, both parties agreed that the Superior Court had jurisdiction over the matter and the parties. As a general rule, the Family Division of the Superior Court has jurisdiction "[t]o determine the custody or guardianship of the person of any child living within the judicial division . . . ." V.I. CODE ANN. tit. 4, § 172(d). Although Kimani was not living on St. Thomas when Daniel filed his petition for custody, because Kimani had been removed by Madir prior to the filing, the Uniform Child-Custody Jurisdiction and Enforcement Act, which has been adopted in the Virgin Islands, provides in pertinent part that a Virgin Islands court

> has jurisdiction to make an initial child-custody determination only if (1) this State is the home State of the child on the date of the commencement of the proceeding, or was the home State of the child within six months before the commencement of the proceeding and the child is absent from this State but a parent or person acting as a parent continues to live in this State[.]

16 V.I.C. § 127(a). The Superior Court found, and the parties agreed, that the Virgin Islands was the home state of Kimani within six months before Daniel filed his petition.

## III. DISCUSSION

■ While there is no Virgin Islands statute which expressly addresses the standard that a court should apply in making a child custody determination in original child custody proceedings, we agree with the Superior Court that the best interests of the child are of paramount concern. In fact, it appears that most other jurisdictions require a court to consider the best interests of the child in child custody proceedings,[5] and a recurring theme in our Code's domestic relations statutes is that a court must consider the best interests of the child when making decisions that concern the child. For example, title 16, section 109(a)(1), which establishes the requirements for final divorce decrees, requires the court to "decree . . . for the future care and custody of minor children of the marriage as it may deem just and proper, having due regard to the age and sex of such children and giving *primary consideration to the needs and welfare of such children.*" (Emphasis added). *Accord* 16 V.I.C. § 109(b) (In determining custody in a divorce proceeding "a determination by the court that . . . domestic violence has occurred raises a rebuttable presumption that it is in the best interest of the child to reside with the parent who is not the perpetrator of domestic violence . . . ."). Likewise, in promulgating The Virgin Islands Grandparents' Visitation Rights Act, the Legislature declared, in pertinent part, that "[i]t is the express policy of this Territory to encourage continuing contact between a minor child and parents and grandparents who have shown the ability to act in the best interest of the child . . . ." 16 V.I.C. § 602. The Legislature has accorded similar preferential treatment to the best interests of a child in adoption proceedings, requiring that a court presiding over an adoption petition to consider whether "the proposed adoption is in the best interests of the

---

[5]    *See Lehman v. Lycoming County Children Servs. Agency*, 648 F.2d 135, 138 n.2 (3d Cir. 1981) (noting that "[i]n Pennsylvania, as in virtually all jurisdictions, the overriding concern in child custody proceedings is the best interests of the child." (citing *Commonwealth ex rel. Parikh v. Parikh*, 449 Pa. 105, 107-08, 296 A.2d 625, 627 (1972); *Commonwealth ex rel. Drum v. Drum*, 263 Pa. Super. 248, 397 A.2d 1192, 1193 (1979)); *See also generally, Troxel v. Granville*, 530 U.S. 57, 84 n.5, 120 S. Ct. 2054, 2070, 147 L. Ed. 2d 49 (2000) (Stevens, J., dissenting) (noting that "a search of current state custody and visitation laws reveals fully 698 separate references to the 'best interest of the child' standard"); Francis J. Catania, Jr., *Accounting to Ourselves for Ourselves: An Analysis of Adjudication in the Resolution of Child Custody Disputes*, 71 NEB. L. REV. 1228, 1244 (1992) ("In the overwhelming majority of jurisdictions in the United States, the guiding principle of law in child custody disputes . . . is the 'Best Interests of the Child' standard").

child." 16 V.I.C. § 145(a). And finally, by way of example, the Legislature has required that child support determinations "must be based on criteria taking into consideration the best interests of the child (children)." 16 V.I.C. § 345(c).

■ The requirement that courts give priority consideration to the "child's interests over those of the competing adults is premised on the assumption that when a family breaks up, children are usually the most vulnerable parties and thus most in need of the law's protection." PRINCIPLES OF THE LAW OF FAMILY DISSOLUTION § 2.02 cmt. b (2002). While our Legislature has not specifically promulgated a standard for family courts to apply in original child custody proceedings, as explained above, it has expressly stated that the primary considerations in awarding custody as part of a divorce proceeding are the needs and welfare of the child. Considering this expression of the Legislature's intent, the requirements that family courts consider the best interests of the child in other domestic relations proceedings involving visitation, adoption and support, and the need to protect the vulnerable interests of a child in a custody dispute, it is clear that the Legislature intends for Virgin Islands courts, like courts in other jurisdictions, to resolve custody disputes according to the best interests of the child. Indeed, we can discern no reason why the Legislature would intend to apply a different standard in original child custody proceedings than in other proceedings concerning child custody, visitation, and support. Accordingly, we conclude that the best interests of the child should be the paramount concern of a court presiding over an original child custody dispute between the child's parents.[6]

■ In this case, the Superior Court determined Kimani's best interests by considering the respective home environments, the ability of each parent to nurture the child, whether either parent was guilty of any abuse or neglect, the interrelationship of the child to the parents and other individuals who were present in the home, the ability of the child to interrelate to siblings, and the willingness of each parent to provide a stable home environment for the child. Notwithstanding the court's

---

[6] We note that although no appellate court in this jurisdiction appears to have applied the best interests of the child standard in a published opinion addressing an original child custody proceeding, in *Smith v. Cedano*, 24 V.I. 11, 13-14 (Terr. Ct. 1988), the trial court applied the standard under circumstances similar to the instant case.

consideration of these factors, Madir asserts on appeal that the judge abused her discretion because she "arbitrarily granted custody of [Kimani] to Appellee in total disregard of the 'Best Interests of the Child' doctrine . . . ." (Appellant's Br. 8.) Madir's assertion is based on two arguments. First, Madir contends that "the trial judge indicated on the record that she had made a decision on custody *prior* to the custody hearing." (*Id.*) (Emphasis in original). In support of this first argument, Madir points to the court's comments at the beginning of the January 2, 2008 hearing, in which the judge summarized what occurred in the earlier proceedings. Although Madir correctly points out that the judge stated that she had prepared an order awarding custody to Daniel based on the earlier proceedings, it is clear from the record that the court never entered that order and the judge plainly stated that she considered those proceedings "moot." (App. 5.) The court then conducted an evidentiary hearing on Daniel's petition in which both parties presented evidence and argument. The court did not render its findings of fact and conclusions of law until after that evidentiary hearing, and the record shows that the court's decision was based on evidence presented at that hearing. Accordingly, we find no merit in Madir's assertion that the Superior Court arbitrarily decided the custody issue prior to the hearing.

Madir's second argument is that the Superior Court abused its discretion because it did not consider numerous factors, such as the age and sex of the child, the mental and physical health of the child and the parents, the parent's lifestyle, the emotional ties between the parents and the child, the child's ties to school, home and the community, the parent's ability to support the child, and the child's preferences, all of which, Madir contends, the court "must" consider when determining the best interests of a child. (Appellant's Br. 9.) (Emphasis omitted). Citing to title 16, section 109, Madir seemingly believes that the Virgin Islands Code mandates such consideration. But, aside from cases involving domestic violence, section 109 is silent as to what factors a court should consider when determining the needs and welfare of the child subject to a custody dispute. *See generally*, 16 V.I.C. § 109.

■ In fact, the Legislature has not defined which factors a court should or must consider in determining the best interests of a child. While it appears that several states have statutorily defined the factors that a court should consider, *see, e.g.*, ALASKA STAT. § 25.20.060(a) (West 2010); ARIZ. REV. STAT. ANN. § 25-403(A) (West 2010); COLO. REV. STAT.

ANN. § 14-10-124 (1.5)(a) (West 2010); DEL. CODE ANN. tit. 13, § 722(a) (West 2010), the Virgin Islands Code is silent on the matter. And, while many, or perhaps all, of the factors cited by Madir might be relevant in a particular case, we are not in a position as an appellate court to mandate that all such factors, or even additional factors, must be considered in every case. On the contrary, our task in this appeal is to ensure that the Family Division of the Superior Court did not abuse its discretion in awarding custody of Kimani to Daniel. And, contrary to Madir's assertion, the record discloses that the Superior Court did not arbitrarily decide the issue, but instead considered numerous factors related to the best interests of the child. While we do not suggest that Superior Court judges have unbridled discretion to decide which factors should be considered in child custody proceedings, and we encourage judges to take account of all relevant considerations, in this case it cannot be said that the judge abused her discretion in limiting her evaluation to the factors discussed above.[7] Accordingly, we disagree with Madir's assertion that the Superior Court abused its discretion in concluding that it was in Kimani's best interest for him to be permanently placed in his father's physical custody.

█ We next address two issues raised by Madir that were apparently not raised in the Superior Court. First, Madir contends that the Superior Court's custody order should be reversed because the court abused its discretion by failing to appoint separate counsel to represent Kimani's interests. Second, though not separately enumerated as error, Madir asserts that the "the trial judge denied all requests by counsel for the Appellant to have the Appellee undergo a 'home study.' " (Appellant's Br. 11.) In violation of this Court's rules, however, Madir has not referred "to

---

[7] We note that in its *Principles of the Law of Family Dissolution*, the American Law Institute has attempted to strike a balance between the predictability and determinacy accorded by requiring consideration of specific criteria and the flexibility that results when a court is left to decide what it believes is in the best interests of the child. As explained in the comments, the drafters "attempt[] to achieve this equilibrium through structured decision making criteria that limit judicial discretion and at the same time express widely held societal commitments to children and to family diversity." *Principles of the Law of Family Dissolution* § 2.02 cmt. c (2002). A review of the ALI's principles shows that there is more than one way to determine the best interests of a child in a custody dispute between parents. In light of these competing considerations and the numerous ways to determine a child's best interests, we believe the task of defining criteria for determining the best interests is best left to the Legislature.

specific pages of the appendix or place in the proceedings at which each issue on appeal was raised, objected to, and ruled upon." V.I.S.CT.R. 22(a)(3). Furthermore, though we do not cull the record to determine whether an error has been preserved, our review of the Appendix in this case indicates that neither asserted error was raised nor ruled upon in the Superior Court.

■ In one of this Court's earliest opinions we pointed out that "[a]ppellate courts generally refuse to consider issues that are raised for the first time on appeal." *Daniel*, 49 V.I. at 335 (citing *Newark Morning Ledger, Co. v. United States*, 539 F.2d 929, 932 (3d Cir. 1976)). This refusal stems from the fact that, while the Federal Rules of Criminal Procedure permit review of certain plain errors even though they were not raised in the trial court, *see* FED. R. CRIM. P. 52(b), there is no corresponding rule permitting such review in the civil context. Thus, in *Daniel* we ruled that " 'absent exceptional circumstances, an issue not raised in the [trial] court will not be heard on appeal.' " *Id.* (quoting *Franki Found. Co. v. Alger-Rau & Assocs., Inc.*, 513 F.2d 581, 586 (3d Cir.1975)). While such exceptional circumstances may exist " 'where the error is so serious and flagrant that it goes to the very integrity of the trial,' " *Fashauer v. N.J. Transit Rail Operations, Inc.*, 57 F.3d 1269, 1289 (3d Cir. 1995) (quoting *United States v. Carson*, 52 F.3d 1173, 1188 (2d Cir. 1995)), even then our review is for plain error, and our decision of whether to review is discretionary. *Id.*

■ In this case, Madir has not cited any exceptional circumstances which warrant review of her unpreserved errors. Furthermore, even if we were to review Madir's assertions, it is clear that they lack merit. While some jurisdictions have statutes or local rules which permit a court to appoint separate counsel in child custody disputes,[8] neither the Virgin

---

[8]    *See, e.g.*, LA. REV. STAT. ANN. § 9:345(A) (West 2010) ("In any child custody or visitation proceeding, the court, upon its own motion, upon motion of any parent or party, or upon motion of the child, may appoint an attorney to represent the child if, after a contradictory hearing, the court determines such appointment would be in the best interest of the child."); CA. R. SAN BERNADINO SUPER. CT. Ch. 15, Rule 1513 ("In any family law or other proceeding where two or more persons are disputing the division of time with (physical custody) or responsibility for (legal custody) of a minor child or the court determines that the appointment is justified by the facts of the specific case, the court should consider the appointment of an attorney to represent the best interests of the child if requested to do so by [certain interested parties]; or the court may appoint counsel on its own motion.").

Islands Code nor the Rules of the Superior Court contain such a provision, and in any event, these decisions are typically left to the trial court's discretion. *See Gallet v. Gallet*, 10 So.3d 255, 258 (La. Ct. App. 2009); *Jean v. Jean*, 59 A.D.3d 599, 875 N.Y.S.2d 88, 89-90 (N.Y. App. Div. 2009). In the absence of such a requirement and considering that Madir never requested separate counsel for Kimani, nor demonstrated any prejudice to Kimani resulting from the lack of separate counsel, we can discern no reason to disturb the Superior Court's judgment.

█ We likewise reject Madir's assertion concerning the Superior Court's failure to conduct a home study. While Rule 88 of the Rules of the Superior Court authorizes the court to order social investigations, it does not require such investigations,[9] Madir did not request one, and she has not shown how she was prejudiced by the lack of one.

## IV. CONCLUSION

We conclude that the Superior Court did not abuse its discretion in awarding permanent physical custody of Kimani to his father. It is clear that the court based its decision on several factors related to the best interests of the child, and Madir's assertions that the court abused its discretion are simply unsupported by the record. Accordingly, the Superior Court's award of permanent physical custody is affirmed.

---

[9] *See* SUPER. CT. R. 88 ("The court *may* require a social investigation by a probation officer or other person at any time during the proceedings.") (Emphasis added).