**EARL MOORE, Appellant/Defendant**
**v.**
**PAULA WALTERS, Appellee/Plaintiff**

S. Ct. Civil No. 2013-0088

Supreme Court of the Virgin Islands

October 29, 2014

DOLACE MCLEAN, ESQ., Visions Law Firm, St. Thomas, USVI, *Attorney for Appellant.*[1]

Paula Walters, St. Thomas, USVI, *Pro se.*

---

[1] Appellee Paula Walters, although afforded the opportunity to address this Court via brief, failed to do so. Therefore, this Court considers the matter solely based on Appellant's brief and the record.

HODGE, *Chief Justice*; CABRET, *Associate Justice*; and SWAN, *Associate Justice*.

## OPINION OF THE COURT

(October 29, 2014)

SWAN, *Associate Justice*. Appellant, Earl Moore, appeals the September 27, 2013, opinion and order of Appellate Division of the Superior Court of the Virgin Islands, which affirmed a judgment entered by the Magistrate Division of the same court against him in the amount of $5,400. Moore asserts that the hearing held by the Magistrate Division was unfairly administered because of a lack of impartiality by the magistrate and the magistrate's failure to afford him the privileges allowed him by Superior Court Rule 64. For the following reasons, we affirm.

## I. FACTS AND PROCEDURAL HISTORY

Paula Walters ("Walters") and Moore had a protracted romantic relationship. On Mother's Day of 2008, the couple attended an event at the Island Center on St. Croix. The parties dispute at whose home they spent the night, but both parties admit to spending the night together. Walters filed suit in the small claims division of the Superior Court on April 8, 2009, alleging that after the Mother's Day outing and after spending the night at her home, Moore stole $5400 from her vehicle while she was in bed. She testified that the door to her home has deadbolt locks and a key is required to enter and to exit the home. She further testified that she allowed Moore to use her keys, which also included her car keys, to exit her home on the Monday following Mother's Day. She stated that after he exited her home, he returned the keys to her through her bedroom window.

Walters testified that she and Moore had discussed the money and its location in her vehicle prior to his departure from her home on the morning of May 12, 2008, because she had intended for Moore to use the money to purchase supplies for making repairs to her home. She testified that the money was wrapped and placed in a brown paper bag, which she had secreted under her car seat in February of 2008. She further stated that she did not discover that the money was missing immediately after Moore departed her home on the morning after Mother's Day. Walters testified

that she noticed the money was missing after the hearing on Moore's request for a restraining order against her in July of 2008. Later in her testimony, Walters testified that she noticed the money was missing for the first time two or three weeks after Mother's Day.

On the other hand, Moore testified that the couple spent the night at his home because it was located close to Island Center. He denied taking the money from Walters' car and denied having knowledge that he was being accused of taking the money prior to the filing of this case. Instead, he asserted that Walters assaulted him at his home a few days after Mother's Day of 2008 and that the police advised him to take the matter to Family Division of the Superior Court. On July 15, 2008, Walters and Moore appeared in the Family Division for a hearing for a permanent restraining order against Walters.[2] Following the hearing, the Family Division dismissed the case.

Quieanna Walters ("Quieanna"), Walters' granddaughter, also testified about the sleeping arrangements between Moore and Walters on Mother's Day of 2008. At the hearing, Quieanna testified that Moore came to Walters' home on Mother's Day "around eight, nine." The conversation between the trial court and Quieanna was as follows:

> THE COURT: Do you know he was in the house on the night of Mother's Day in May of 2008?
>
> THE WITNESS: Yes, he came there with my grandmother and then they left.
>
> THE COURT: When you say your grandmother, you mean the plaintiff, Paula Walters.
>
> THE WITNESS: Yeah.
>
> THE COURT: He came there and they left. Do you know where they were going?
>
> THE WITNESS: To his house.

---

[2] We note that Moore has included the transcript of the July 15, 2008 hearing for a permanent restraining order. This transcript was not recognized or considered by the Magistrate Division of the Superior Court and although we take judicial notice of its inclusion, was not considered in the Magistrate Division's decision below and not a part of the Magistrate Division's official record. *See* FED. R. EVID. 201(b); *Phonometrics, Inc. v. Hospitality Int'l, Inc.*, 120 Fed. Appx. 341, 345 (Fed. Cir. 2005) (trial court did not err in taking judicial notice of transcripts of prior court proceedings because those transcripts were sources "whose accuracy cannot reasonably be questioned" within the intendment of Rule 201(b)).

```
THE COURT:     What time was that?
THE WITNESS:   I don't know. Like, around eight, nine.
THE COURT:     Eight-nine at night?
THE WITNESS:   Yeah.
THE COURT:     Did they ever come back?
THE WITNESS:   I remember seeing she the next morning.

                    . . . .

THE COURT:     She came home by herself?
THE WITNESS:   Yeah.
```

The magistrate entered judgment in favor of Walters, and Moore appealed to the Supreme Court but the appeal was rejected for lack of jurisdiction.[3] On remand the Appellate Division of the Superior Court issued an amended briefing schedule. Moore filed his brief on time, but Walters failed to provide a responsive brief, which forfeited her right to participate in that appeal. The Appellate Division entered its opinion on September 27, 2013, affirming the Magistrate Division's decision. This appeal ensued.

## II. JURISDICTION

Title 4, section 32(a) of the Virgin Islands Code states that "[t]he Supreme Court shall have jurisdiction over all appeals arising from final judgments, final decrees or final orders of the Superior Court, or as otherwise provided by law." A final order ends the litigation on the merits, leaving nothing else for the court to do except execute the judgment. *Ramirez v. People*, 56 V.I. 409, 416 (V.I. 2012) (citing *In re Truong*, 513 F.3d 91, 94 (3d Cir. 2008) & *Bethel v. McAllister Bros., Inc.*, 81 F.3d 376, 381 (3d Cir. 1996)). The Superior Court entered its order on September 27, 2013, and Moore timely filed his notice of appeal on October 23, 2013. Therefore, we have jurisdiction over Moore's appeal to review the Appellate Division of the Superior Court's decision entered on September 27, 2013.

---

[3] *See H&H Avionics, Inc. v. V.I. Port Auth.*, 52 V.I. 458, 462-63 (V.I. 2009) (holding that a litigant does not possess the right to directly appeal a magistrate's order to the Supreme Court without first filing an appeal with the Appellate Division of the Superior Court).

## III. STANDARD OF REVIEW

The standard of review for this Court's examination of the trial court's application of law is plenary, and its findings of facts are reviewed for clear error. *Rodriguez v. Bureau of Corr.*, 58 V.I. 367, 371 (V.I. 2011); *Blyden v. People*, 53 V.I. 637, 646-47 (V.I. 2010); *Pell v. E.I. DuPont de Nemours & Co.*, 539 F.3d 292, 300 (3d Cir. 2008). "[T]he appellate court must accept the factual determination of the fact finder unless that determination 'either (1) is completely devoid of minimum evidentiary support displaying some hue of credibility, or (2) bears no rational relationship to the supportive evidentiary data.'" *St. Thomas-St. John Board of Elections v. Daniel*, 49 V.I. 322, 329 (V.I. 2007) (citation omitted). When reviewing decisions of the Appellate Division of the Superior Court, we typically consider the underlying rulings made by the Magistrate Division only to the extent that they were adopted or affirmed by the judge of the Appellate Division. *Browne v. Gore*, 57 V.I. 445, 453 (V.I. 2012). In most cases, we will decline to directly review the magistrate's rulings, out of consideration for the "unique relationship" between the Magistrate and Appellate Divisions of the Superior Court, and traditional appellate practices. *Id.* However, when we apply the same standard as the Appellate Division, we may, in the interests of judicial economy, look past the Appellate Division's decision and directly review the magistrate's rulings. *Id.*

## IV. DISCUSSION

### A. Moore's request that this Court reconsider the credibility of the witnesses is outside the province of this Court and thus we affirm the factual determinations of the court below.

Moore points to multiple conflicts between his testimony and the combined testimony of Walters, Walters' daughter, Debbie, and her granddaughter, and contends that these conflicts should have led the magistrate to conclude that, on the whole, his testimony was more credible and worthy of belief. Moore also made this argument to the Appellate Division. The Appellate Division dismisses this argument by stating that it is an ancillary issue and not material to the matter before the court. We agree with the Appellate Division. The Appellate Division focused on the testimony given that the brown paper bag with the money was removed from Walters' vehicle and that Debbie, corroborated

Walters' testimony. We find no error in the Appellate Division affirming the magistrate's factual determination.

▪ Further, by underscoring these conflicts, Moore is requesting that this Court reassess the credibility of the witnesses who testified at the small claims hearing. It is well established that, on appeal, the court must defer to the credibility decision made by the factfinder, whether it be the judge or the jury. *James v. People*, 60 V.I. 311, 328 (V.I. 2013) ("We cannot usurp the role of the jury by re-analyzing, re-evaluating, or re-weighing the evidence presented at trial, or by determining the credibility of the witnesses."); *Phillips v. People*, S. Ct. Crim. No. 2008-0017, 2010 V.I. Supreme LEXIS 4, *10 (V.I. Feb. 11, 2010) (unpublished) ("Although there were conflicts in the evidence, on appeal we do not resolve conflicts, weigh the evidence, or assess witness credibility.")

▪ Moore's request for us to reconsider the testimony of Walters and her family members is outside the province of this Court. The magistrate stated: "The Court gives credibility to the testimony of the daughter . . . ." This explicit determination of credibility by the magistrate cannot be overturned if a rational person could agree with the assessment of the trial court, as is the case here. The conflicts in Walters' testimony that are highlighted by Moore in his brief cannot be resolved by this Court. Therefore, Moore's argument regarding what he asserts was the "perjured testimony" of Walters does not present grounds for reversing the Appellate Division's decision to uphold the magistrate's determinations.

## B. Superior Court Rule 64 does not diminish a litigant's responsibility to present his case and evidence in his favor.

Superior Court Rule 64 states:

> The judge shall conduct the trial in such manner as to do substantial justice between the parties according to the rules of substantive law, and *shall not be bound by the statutory provisions or rules of practice, procedure, pleadings, or evidence*, except such provisions relating to privileged communications.

SUPER. CT. R. 64 (emphasis added).

▪ "While Superior Court Rule 64 requires the Small Claims Division to do 'substantial justice between the parties,' it must do so 'according to the rules of substantive law.' " *Mill Harbour Condo. Owner's Ass'n v.*

*Marshall*, 53 V.I. 581, 588 (V.I. 2010). Further, 4 V.I.C. § 111 states, "[t]here is in the Superior Court a small claims division, in which the procedure shall be as informal and summary as is consistent with justice." Moore argues that substantial justice was not afforded him because the magistrate denied his attempt to present evidence of Walter's prior inconsistent statement and introduction of evidence. We uphold the Appellate Division's decision stating that "it was not the magistrate's obligation to obtain evidence and make Moore's case for him. Moreover, Moore never requested that the court aid him in obtaining the July 2008 transcript." The Appellate Division further explained that although Moore is asserting that his need for assistance was ignored, the magistrate did question Walters about the hearing that Moore mentioned.

Before the magistrate, Moore said, "Your honor, Paula never mentioned anything about money being stolen or missing in 2008, when Paula was in . . . court. And I don't know if you could get a transcript on what Paula says, when we were in the court July 15, 2008. Okay." The trial court, within its discretion, could have provided Moore with directions on how to procure a copy of the transcript and then it could have interrupted the proceedings and continued the hearing for another date to allow Moore to produce a witness or a transcript that he failed to have with him as the case was tried, but the court chose not to do so. Instead, the trial court addressed his request by questioning Walters about her testimony at the earlier hearing in the Family Division for the permanent restraining order. Although the issue was not addressed as Moore would have preferred, it was considered. Accordingly, Moore's argument which suggests that the trial court summarily dismissed his request is specious. Therefore, we affirm the judgment of the Appellate Division on this matter.

### C. Moore's allegation of judicial bias is waived.

Moore also argues that the magistrate did not provide him a fair trial because the court "seemed to display . . . antipathy towards Mr. Moore." Moore further asserts that the magistrate was short in demeanor and provided greater latitude for Walters to present her case and to clarify her testimony. Moore failed to raise these objections at the hearing; therefore, these arguments are waived unless there were exceptional circumstances that affected the integrity of the trial. *Madir v.*

*Daniel*, 53 V.I. 623, 635 (V.I. 2011);[4] *Anthony v. First Bank Virgin Islands*, 58 V.I. 224, 233 n.11 (V.I. 2013); *see also Ruiz v. Jung*, S. Ct. Civ. No. 2008-0035, 2009 V.I. Supreme LEXIS 43, *11 (V.I. Oct. 19, 2009) (unpublished) ("Importantly, it is a 'well-established rule that absent compelling circumstances an appellate court will not consider issues that are raised for the first time on appeal.' " (quoting *Patterson v. Cuyler*, 729 F.2d 925, 929 (3d Cir. 1984))). Further, exceptional circumstances are identified "where the public interest requires that the issues be heard or manifest injustice would result from the failure to consider such issues." *V.I. Port Authority v. Joseph*, 49 V.I. 424, 428 (V.I. 2008) (quoting *Brown v. Philip Morris, Inc.*, 250 F.3d 789, 799 (3d Cir. 2001)).

The record reveals that Moore's argument regarding the magistrates' demeanor toward him was reviewed by the Appellate Division. This review by the Appellate Division was erroneous; however, Moore did not present then nor has he presented now, any exceptional circumstances warranting a deviation from the general practice.

"Mere friction between the court and counsel, . . . is not enough to demonstrate pervasive bias." *Hamm v. Bd. of Regents*, 708 F.2d 647, 651 (11th Cir. 1983). The perceived temperament of the magistrate may not have been to the liking of Moore but it does not warrant deviation from the established rule of waiver when a party fails to preserve an argument. Moore's argument is therefore waived.

## V. CONCLUSION

Accordingly, we find no reversible error with respect to the factual determinations made by the magistrate and upheld by the Appellate Division. In addition, Moore's bias argument is waived. Therefore, we affirm the Appellate Division's September 27, 2013 opinion and order.

---

[4] In *Madir*, this Court elaborated further that, "[t]his refusal stems from the fact that, while the Federal Rules of Criminal Procedure permit review of certain plain errors even though they were not raised in the trial court . . . there is no corresponding rule permitting such review in the civil context. Thus, in [*St. Thomas-St. John Board of Elections v.*] *Daniel* we ruled that " 'absent exceptional circumstances, an issue not raised in the [trial] court will not be heard on appeal.' " 53 V.I. at 635 (quoting *St. Thomas-St. John Board of Elections*, 49 V.I. at 335).