**IN THE MATTER OF D. A. B. FOR A CHANGE OF NAME TO:
D. A. B., a Minor**

S. Ct. Civil No. 2013-0131

Supreme Court of the Virgin Islands

August 21, 2015

DELENO A. BURROUGHS, St. Croix, USVI, *Pro se.*

VALARIE Y. GILLARD, St. Croix, USVI, *Pro se.*

HODGE, *Chief Justice*; CABRET, *Associate Justice*; and SWAN, *Associate Justice.*

## OPINION OF THE COURT

(August 21, 2015)

HODGE, *Chief Justice.* A father appeals from the Superior Court's November 6, 2013 order denying his petition to change the first name of his minor child. We affirm.

## I. BACKGROUND

On June 11, 2013, the father filed a petition with the Superior Court to change the name of his child. In his petition, the father primarily alleged that the child's mother fraudulently obtained the "Voluntary Certificate of Parentage" offered in the proceedings below, a sworn acknowledgment of paternity as contemplated in 16 V.I.C. § 292, that set forth the child's legal name ("D.A.B. I"). The father requested in the petition that the name be changed to a different name ("D.A.B. II")[1] that he claimed he and the mother had jointly agreed to at an earlier date. The mother opposed the petition.

The Superior Court held a hearing on the petition on October 9, 2013. At the hearing, the Superior Court heard testimony from the parties, as well as from Elaine C. Spencer, a notary public with the Department of Health who was assisting in the Vital Statistics office, and who notarized the father's signature on the "Voluntary Certificate of Parentage." During his opening statement, the father stated that on January 9, 2013, he went to the Department of Health's Office of Vital Statistics with the mother to fill out a "Voluntary Certificate of Parentage" form. The father, however, maintained that when he signed the document, it did not list a baby name or birth date. Moreover, the father contended that although Spencer notarized his signature on the document, there was no notary present in the room when he signed it. The mother, in contrast, stated that the document was properly executed, but that she believed the father may have been distracted when he signed it because his girlfriend was outside of the room and was upset. The mother stated that the father did not wish to name their child "D.A.B. I" because he wanted to reserve that name for the child that he would soon have with his pregnant girlfriend, who later became his wife.

Spencer largely corroborated the mother's version of events. She testified that she knew the mother personally, and remembered her and the father's January 9 visit to the Vital Statistics Office. She explained that the father, the mother, and a young woman were present that day, but that the young woman was very upset and left the room, at which point the mother

---

[1] Because the minor's legal name, as well as the father's preferred name, both share the initials "D.A.B.," the names are referred to herein as "D.A.B. I" and "D.A.B. II" in order to avoid confusion, while still conforming to this Court's redaction rules. *See* V.I.S.CT.R. 15(c)(2).

explained to her that the woman was the father's girlfriend and asked that Spencer call 9-1-1. Spencer testified that at this point, both the father and the mother had already started completing their paperwork. Although Spencer briefly left the room to inform security about the incident between the mother and the father's girlfriend, she stated that when she returned both the mother and the father were still in the room, and she was able to notarize both of their signatures. Spencer explained that she checked both of their government-issued identifications while they were present, and that she examined all of the documents — including the "Voluntary Certificate of Parentage" — to ensure that they had been filled out and did not contain any blank sections.

To support his claim of fraud, the father introduced a series of text messages between him and the mother on January 25, 2013, in which he texted to her, "I know u did what u want, u even sign papers I was suppose[d] to sign," to which the mother replied, "You walk off so I did what I had to do[.] you would of done the same thing to[o]." (J.A. 20 (all spelling from original).) According to the father, this exchange was in reference to the January 9, 2013 visit to the Office of Vital Statistics, and corroborated his claim that the mother filled in parts of the form after he left. The father also contended that the mother subsequently filled a prescription for the child on January 12, 2013, using the agreed name D.A.B. II, rather than the D.A.B. I name that appeared on the "Voluntary Certificate of Parentage," which he argued proved that the mother was aware that he wished for their child to be named D.A.B. II.

At the conclusion of the hearing, the Superior Court orally announced that it was denying the petition, because Spencer's testimony

> essentially established by a preponderance of the evidence to the satisfaction of the Court [that] this document was, in fact, valid. That it was signed in her presence. That she executed the document consistent with her practice and that being that the signator presented to her photographs of . . . government issued identifications . . . photo copies [of which] were presented to the Court.
>
> She indicated that that was done [and that the father] reviewed the document. The document was completed. That it was signed by both parties in her presence and that the items that are on the official court copy were, in fact, on that document at the time she signed it. And therefore, that established to the Court by overwhelming evidence that the document was not fraudulently obtained.

(Trial Tr. 43.) On November 6, 2013, the Superior Court memorialized its decision in a written order, which again credited Spencer's testimony and concluded that the father's signature on the "Voluntary Certificate of Parentage" had not been fraudulently obtained.[2]

The father filed an untimely notice of appeal with this Court on December 9, 2013. *See* V.I.S.CT.R. 5(a)(1) (a notice of appeal "shall be filed with the Clerk of the Supreme Court within 30 days after the date of entry of the judgment or order appealed from."). This Court, in a February 13, 2014 order, held the appeal in abeyance pending a determination by the Superior Court as to whether the father's untimely appeal could be attributed to excusable neglect or good cause. V.I.S.CT.R. 5(b)(6). The Superior Court, in a June 19, 2014 order, held that good cause existed for allowing the untimely filing, and this Court issued an order on June 20, 2014 permitting the appeal to proceed. Nevertheless, when the father failed to file an appellate brief in a timely manner, this Court dismissed this appeal for failure to prosecute on August 27, 2014. Upon the father's motion, this Court reinstated this appeal on September 25, 2014, and, after several extensions of time were granted, the father finally filed his appellate brief on February 26, 2015.

## II. DISCUSSION

### A. Jurisdiction and Standard of Review

"The Supreme Court [has] jurisdiction over all appeals arising from final judgments, final decrees or final orders of the Superior Court." V.I. CODE ANN. tit. 4, § 32(a). An order denying a name-change petition is a final order, and thus this Court has jurisdiction over this appeal. *In re Reynolds*, 60 V.I. 330, 332 (V.I. 2013) (citing *Chapman v. Cornwall*, 58 V.I. 431, 436 (V.I. 2013)).

---

[2] In his petition, the father also argued that the D.A.B. I name too closely resembled that of his cousin, which may cause confusion as to the child's paternity and potentially impede access to social services. In its November 6, 2013 order, the Superior Court concluded that it "is not convinced that this is a satisfactory reason to effect a name change, or that a change on these grounds would be in the public interest," given that "many individuals often have similar names, and social services organizations . . . are able to effectively differentiate based on highly individual data." (J.A. 8.) Because the father does not challenge this portion of the Superior Court's holding in his appellate brief, the issue has been waived for purposes of appeal. V.I.S.CT.R. 22(m) ("Issues that were . . . raised or objected to but not briefed . . . are deemed waived for purposes of appeal.").

This Court ordinarily reviews the Superior Court's denial of a name-change petition for an abuse of discretion, "[b]ut to the extent the Superior Court's exercise of this discretion rested on its interpretation and application of a statute, our review is *de novo*." *Reynolds*, 60 V.I. at 333 (collecting cases).

## B. The Superior Court's Factual Findings Are Not Clearly Erroneous

The father, for his sole issue on appeal, contends that the Superior Court erred when it credited Spencer's testimony over the text messages he introduced into evidence. In his brief — which is only one paragraph long with respect to substance — the father maintains that "[the mother] failed to show proof of [their] minor son having to be name[d] [D.A.B. I]," based on the text messages and her use of the D.A.B. II name when she filled a prescription for the child. (Appellant's Br. 5.)

Pursuant to statute, an "[a]pplication for change of name may be heard and determined by the [Superior Court]," and "[n]o lawful change of the name of a person . . . shall be made unless for sufficient reasons not inconsistent with the public interest and satisfactory to the court." 16 V.I.C. § 181. In this case, the Superior Court, after holding the hearing required by section 182 of title 16 of the Virgin Islands Code, denied the father's name-change petition because it rejected his claim that his signature on the "Voluntary Certificate of Parentage" had been fraudulently obtained. Because the Superior Court exercised its discretion based on a factual finding, this Court will only find that it abused its discretion if that finding is clearly erroneous. *Stevens v. People*, 55 V.I. 550, 556 (V.I. 2011). "In order for . . . a finding [of fact] to be clearly erroneous, the party challenging the finding must demonstrate that it was completely devoid of minimum evidentiary support or had no rational relationship to the supportive evidentiary data." *Hodge v. Bluebeard's Castle, Inc.*, 62 V.I. 671, 695 (V.I. 2015) (quoting *Yusuf v. Hamed*, 59 V.I. 841, 857 (V.I. 2013)) (internal quotation marks and alteration omitted).

Here, the Superior Court's finding that the father's signature had not been fraudulently obtained was not clearly erroneous. Spencer testified at the October 9, 2013 hearing that she recognized the father, that she remembered notarizing the father's signature on the document while both the father and the mother were in her presence, and that prior to notarizing the signatures she reviewed the document to ensure that none of the

critical fields had been left blank. She also provided the Court with a copy of the government-issued identification that the father had provided to her that day. Spencer's testimony fully corroborated the version of events recounted by the mother, who also told the Court that the father signed the completed document in Spencer's presence, and provided the Court with a potential motive for the father to disavow the D.A.B. I name.

■ Clearly, the Superior Court, were it to view all of the evidence in the light most favorable to the father, could have permissibly reached the opposite conclusion.[3] However, because the instant case involved a hearing on the merits, it was the duty of the Superior Court, when sitting as the finder of fact, to resolve the factual dispute. *Moore v. Walters*, 61 V.I. 502, 508 (V.I. 2014) ("It is well established that, on appeal, [this] Court must defer to the credibility decision made by the factfinder, whether it be the judge or the jury.") (citing *James v. People*, 60 V.I. 311, 328 (V.I. 2013)). And on appeal, it is not the duty of this Court to re-weigh the evidence and make new findings of fact, but simply to determine whether there is minimum evidentiary support for the trial court's decision. *In re Estate of Small*, 57 V.I. 416, 430 (V.I. 2012). In this case, the Superior Court was well within its discretion to find Spencer's testimony credible and to conclude, accordingly, that the "Voluntary Certificate of Parentage" was properly executed. Consequently, the Superior Court committed no error in denying the father's name-change petition.

## III. CONCLUSION

The Superior Court based its decision to deny the name-change petition on a credibility determination, choosing to credit Spencer's testimony over the contrary testimony of the father. Such a finding may be set aside by this Court only if it is completely devoid of minimum evidentiary support, and the father failed to meet his burden of establishing that this very high standard has been met. Accordingly, we affirm the Superior Court's November 6, 2013 order.

---

[3] We note that the Superior Court stated that it rejected the evidence of the mother registering a prescription in the name D.A.B. II as irrelevant. However, this evidence was certainly relevant, in that — if credited — it could establish that the mother attempted to mislead the father as to the legal name of their child. Nevertheless, because the record clearly reflects that the Superior Court based its decision on a finding that Spencer's testimony was credible, the Superior Court's error in this regard was harmless.