**CARLOS WAREHOUSE, Plaintiff/Petitioner on Review**
**v.**
**EMRIL F. THOMAS, Defendant/Respondent on Review**

Case No. SX-13-SM-448

Superior Court of the Virgin Islands

Division of St. Croix

May 12, 2016

BRADY, *Judge*

## MEMORANDUM OPINION AND ORDER

(May 12, 2016)

THIS MATTER is in the Appellate Division on review from the Magistrate Division. Carlos Warehouse commenced an action in the Small Claims Division against Emril F. Thomas to recover a debt she owed for furniture purchased on credit. After a hearing, the Magistrate Court dismissed Carlos Warehouse's complaint with prejudice. Carlos Warehouse appealed. For the reasons stated below, the dismissal must be reversed and the matter remanded to the Magistrate Court for further proceedings not inconsistent with this opinion.

## BACKGROUND

Carlos Warehouse, a St. Croix business selling furniture, appliances, and electronics, filed a complaint on December 31, 2013 in the Small Claims Division of the Superior Court against Emril Thomas. The complaint alleged that Thomas owed $897.00 for merchandise she purchased from the store. Although the complaint did not allege further detail, two documents were attached that provided additional information. The first attachment, invoice number 18879, showed that Thomas bought furniture from Carlos Warehouse on December 21, 2006. The furniture cost $3,000 and Thomas paid half upfront, which left a balance of $1,500 to be paid. The second attachment, a payment ledger, showed that the balance for invoice 18879 was $1,097.00 and further that Thomas had made two payments, both in October 2013 and both for $100.00 apiece. The remaining balance showed as $897.00, which corresponded to the allegations in the complaint.

The Clerk's Office docketed the complaint, by letter informed Carlos Warehouse of the case number[1] and the Superior Court magistrate

---

[1] Initially, when the Clerk's Office docketed the complaint and assigned a case number, the number assigned was SX-2013-SMC-0000448, which corresponded to a new case number-ing system the Clerk had adopted in December 2013 in tandem with a new electronic filing system the Superior Court implemented. The code "SMC" referred to small claims cases.

assigned, and by notice that a hearing was scheduled for February 4, 2014. At the February 4, 2014 hearing, Sobrina Leonce appeared on behalf of Carlos Warehouse. Thomas did not appear because the Marshal's Office had not been able to effect service. The court continued the matter to March 4, 2014 to allow additional time for service.

On March 4, 2014, Leonce again appeared for Carlos Warehouse. Thomas also appeared. Neither party was sworn. The hearing began with Leonce informing the court of a "mistake on the complaint." (Hr'g Tr. 3:5-6, Mar. 4, 2014.) The amount Thomas owed was $507, Leonce explained, not $897 as the complaint alleged. The court asked Leonce if Thomas agreed on the amount. Leonce responded that Thomas "agrees that she owes $507, but she does not agree that she owes the court costs or the $50 that we paid the process server." *Id.* at 3:15-17. When the court asked Thomas if she still owed $507 to Carlos Warehouse, Thomas admitted that she did. But she said Carlos Warehouse did not give her a "timeframe" to pay in full. *Id.* at 4:14. Thomas too noted a mistake, that Carlos Warehouse listed "the wrong item" in its complaint. *Id.* at 4:24. Invoice 18879 was for a bedroom set she purchased in 2006. She had "finished paying for that a long time ago," she told the court. *Id.* at 5:4. What she still owed for, she said, was a sofa and a loveseat that she bought in 2011. Thomas then passed to the court the invoices and other records she brought that showed the date and amount of her payments and the amount she still owed. *See id.* at 5:23. Thomas's records corresponded to Leonce's representation that the remaining balance was $507.00.

Because of the discrepancy Thomas pointed out, the Magistrate Court turned back to Leonce to ask whether Thomas "owed them anything toward the bedroom set" she bought in 2006. *Id.* at 6:12. Leonce answered, "No. No, Your Honor. Just the living room set." *Id.* at 6:13-14. The court then asked Leonce why Thomas should "pay the court costs" if she no longer owes anything for the 2006 purchases. *Id.* at 6:21-22. Carlos Warehouse "shouldn't even be in the court," the Magistrate Court remarked. *Id.* at 7:6-7. Leonce explained that "the wrong receipt number" was listed on the payment ledger. *Id.* at 7:3. And the reason Carlos

---

However, after the Superior Court had to suspend the electronic filing system in June 2014 and revert to the former electronic docketing system, the Clerk too reverted to the former case numbering system. As a result, the Clerk's Office re-designated this matter as case number SX-13-SM-448.

Warehouse wanted Thomas to pay court and process server costs, Leonce said, was "because the last time [Thomas] made a payment" on the 2011 purchase "was in October" 2013, and she did not pay again "until after she got served" for this case. *Id.* at 7:9-11. When asked if she had proof to support her characterization of Thomas's payment history, Leonce conceded that she did not.

Based on the parties' representations, the Magistrate Court dismissed Carlos Warehouse's case because the complaint and the documents attached claimed that Thomas owed for merchandise bought in 2006. Yet, both parties agreed that the 2006 purchase had been fully paid. The court concluded that the 2011 purchase was "a completely separate transaction" that was "not in front of" it. *Id.* at 7:19, 8:6. The Magistrate Court reduced its dismissal to writing in an order issued the same day except the order decreed that Carlos Warehouse's complaint was dismissed with prejudice.

Ten days later, Carlos Warehouse filed a petition for review of the Magistrate Court's order. In support, Carlos Warehouse attached to its petition copies of invoices and other records showing Thomas's purchases and payments. Carlos Warehouse also filed a request for a transcript of the March 4, 2014 hearing. The Clerk's Office docketed the review proceeding in the Appellate Division and informed Carlos Warehouse by letter of the requirements associated with internal appeals from the Magistrate Division, including the requirement to file a brief on appeal. In a letter dated April 14, 2014 and docketed April 15, 2014, Carlos Warehouse asked the Court to construe its March 14, 2014 petition as its brief on review. Thomas did not respond to Carlos Warehouse's letter. The court reporter submitted the transcript on April 17, 2014. By order entered May 14, 2014, the Court granted Carlos Warehouse's motion, but only as to its right to file a brief. As to Thomas's right, the May 14, 2014 Order granted her leave to file a responsive brief, which she did by letter dated June 26, 2014 and docketed June 27, 2014. Like Carlos Warehouse, Thomas also provided copies of her payment receipts and a ledger reflecting her payments.

## DISCUSSION

 "The Magistrate Division of the Superior Court of the Virgin Islands has original jurisdiction over all non-felony traffic offenses, petty criminal offenses, small claims actions, landlord and tenant actions, probate matters, and civil domestic violence and civil stalking actions."

*David v. People*, SX-15-RV-007, 2016 V.I. LEXIS 15, at *8-9 (V.I. Super. Ct. App. Div. Feb. 22, 2016) (unpublished) (citations omitted). "Superior Court magistrates — and Superior Court judges sitting in the Magistrate Division — serve as the trial court." *Id.* at *9 (internal citation omitted). Like a trial court the magistrate court "presid[es] over the case from commencement through dismissal or issuance of a judgment." *Id.* Once a written judgment or dismissal order is entered, the time to appeal the magistrate court's decision starts. The magistrate court's decision is not deemed final and appealable to the Supreme Court of the Virgin Islands until the decision has been "reviewed and affirmed by a judge of the Appellate Division of the Superior Court or the time to seek review in the Appellate Division . . . expire[s]." *Ascencio v. Caribe Home Ctr., Inc.*, SX-12-SM-459, 2013 V.I. LEXIS 74, at *4-5 (V.I. Super. Ct. App. Div. Oct. 23, 2013) (unpublished); *see also H&H Avionics, Inc. v. V.I. Port Auth.*, 52 V.I. 458, 462-63 (2009). Here, the Magistrate Court's dismissal order was entered on March 4, 2014. Carlos Warehouse filed its petition ten days later, on March 14, 2014. Therefore, this internal appeal is properly in the Appellate Division

■ "Judges sitting in the Appellate Division of the Superior Court function like an appellate court." *Julien v. Mims*, SX-12-SM-300, 2015 V.I. LEXIS 92, at *8 (V.I. Super. Ct. App. Div. Aug. 4, 2015) (unpublished). Because cases in the Magistrate Division are decided without a jury, the magistrate court hears the testimony and considers the evidence before finding the facts and applying the law. *See In re Estate of Small*, 57 V.I. 416, 428-29 (2012). And when the law is unsettled, the magistrate court must determine what law should apply before finding what facts are relevant. *See Wild Orchid Floral & Event Design v. Banco Popular de P.R.*, 62 V.I. 240, 252-53 (Super. Ct. App. Div. 2015); *see also* SUPER. CT. R. 64 (small claims court must "conduct the trial . . . according to the rules of substantive law"); *cf. Kalloo v. Estate of Small*, 62 V.I. 571, 581 (2015) ("the magistrate must necessarily consider the merits of the underlying claim and apply the substantive law governing its resolution."). On review, the appellate court must defer to the magistrate court's findings of fact, reviewing only for clear error. *See Estate of Small*, 57 V.I. at 428-29. But the appellate court does not defer to the law the magistrate court applies. *David*, 2016 V.I. LEXIS 15 at *10. "Instead, questions of law are reviewed under a plenary standard," *id.*, which means the Appellate Division "must provide sufficient analysis to demonstrate

that it has truly performed a full review of the record." *Browne v. Gore*, 54 V.I. 195, 202-03 (Super. Ct. App. Div. 2011), *rev'd on other grounds*, 57 V.I. 445 (V.I. 2012).

In its petition, construed as the petitioner's brief, Carlos Warehouse argues that there was no "reason to dismiss the case" since Thomas "did agree that she owed [a] balance." (Pet'r's Pet. for Review 1, filed Mar. 14, 2014.) "Thomas started an[] account" that "became a running balance." *Id.* She failed to make payments timely, Carlos Warehouse explains, and "her account was $1,000.00 short." *Id.* at 2. So, once "she missed several payments," Carlos Warehouse "brought [her] to court" to recover the remaining balance. *Id.* at 1. In her letter, construed as the respondent's brief, Thomas concedes "there were times [she] faced hardships" and "could not make the payment at a certain time." (Resp.'s Letter 1, filed June 27, 2014.) But she "never forgot and when [she] did get the money [she] would double the payment." *Id.* She further states that she has reduced the balance and hopes that she "will not have to come back to court to deal with this again." *Id.*

While both parties raised general objections, neither Carlos Warehouse nor Thomas expressly asked this Court to "affirm, reverse, modify, or remand, in whole or in part." SUPER. CT. R. 322.3(c). Construing their respective briefs liberally (since the parties are proceeding *pro se*), the Court discerns that Carlos Warehouse wants the March 14, 2014 Order reversed while Thomas wants it affirmed. Whether the Magistrate Court erred in dismissing Carlos Warehouse's complaint with prejudice is a legal question given plenary review. SUPER. CT. R. 322.3(b)(2). However, before turning to the merits, the Court notes that both parties submitted documents on appeal in support of their positions. Thomas attached "all [of her] receipts" to her brief "as sufficient evidence" to show that she has been making payments. (Resp.'s Br. 1.) Carlos Warehouse also submitted multiple documents with its petition for review.[2] But new evidence, different evidence, or more evidence cannot be submitted to the Appellate Division on review. *See Wild Orchid*, 62 V.I.

---

[2] The record is not clear when Carlos Warehouse filed the additional documents as the documents themselves show the Clerk's Office received them on March 13, 2014. the same day the transcript request form was stamped in. However, the transcript form is dated March 14, 2014, the same date stamped on Carlos Warehouse's petition. Neither the current docketing system, eNACT, nor the former docketing system in place at the time, AiCMS, shows any entry on the docket for March 13, 2014. Also, the scanned image of the petition includes the

at 248; *People v. Joseph*, ST-15-RV-006, 2016 V.I. LEXIS 5, at *5 (V.I. Super. Ct. App. Div. Jan. 19, 2016) (unpublished); *Moore v. Walters*, SX-09-SM-203, 2013 V.I. LEXIS 73, at *6 (V.I. Super. Ct. App. Div. Sept. 25, 2013) (unpublished), *aff'd* 61 V.I. 502 (2014); *accord Estate of Small*, 57 V.I. at 429-30 (all evidence must be submitted to magistrate court in probate matters). Here, the docket does not show that Thomas submitted anything to the trial court. And while the transcript reflects that Thomas handed her papers to the marshal who handed them to the court — and further reflects that the court reviewed her papers and questioned her on them — the Magistrate Court did not admit Thomas's documents into evidence or otherwise make them part of the record. Similarly, the only documents Carlos Warehouse submitted in the trial court were the documents attached to its complaint. And Leonce admitted in court that she did not have proof to refute Thomas's documentation. So, because none of the documents the parties filed on appeal were submitted in the Magistrate Division, this Court, as an appellate court, cannot consider them and must instead limit its review "to the same record" that was before the trial court. *Joseph*, 2016 V.I. LEXIS 5 at *4.

Turning to the merits, Carlos Warehouse asserts on appeal that the Magistrate Court erred by dismissing its complaint. While the issue is straightforward, resolving it is not. To explain, the Magistrate Court's March 4, 2014 Order stated that Carlos Warehouse's complaint was dismissed with prejudice because "[t]he complaint was based on an assertion" that Thomas "owes for merchandise purchased on December 21, 2006," yet "the evidence revealed that" Thomas had fully paid for those items. (Order 1, entered Mar. 4, 2014.) But the court did not explain, not in the order or from the bench, why the complaint had to be dismissed, instead of amended to cure any defect or variance. The court also did not state what law governed Carlos Warehouse's claim or Thomas's defense. Further, because the parties were not sworn and no documents were admitted, the court had no evidence to base its decision on. Yet, by accepting Thomas's defense, the court issued a decision on the merits of

---

documents as though everything was filed together. Either the timestamp machine malfunctioned or Carlos Warehouse actually filed the documents and the transcript form a day before filing its petition. Despite the discrepancies, it is clear from the record that the documents were filed after the March 4, 2014 proceeding and that the Clerk's Office considered the documents as part of the appeal, not as a motion for reconsideration. *See, e.g.*, SUPER CT. R. 322.1(b)(1)(D)-(E).

Carlos Warehouse's claim. Each of these issues will be addressed, as some are likely recur on remand. *See Smith v. Turnbull*, 54 V.I. 369, 374 (2010) ("[A]n appellate court, when ordering a remand to a trial court for further proceedings based on its disposition of one issue may, in the interests of judicial economy, nevertheless consider other issues that, while no longer affecting the outcome of the instant appeal, are likely to recur on remand." (quotation marks and citation omitted)).

██ Before discussing the Magistrate Court's decision, this Court must decide what claim Carlos Warehouse alleged in its complaint and what law governs since the Magistrate Court never identified the claim Carlos Warehouse asserted against Thomas or what law governs such claims. *Cf. Phillip v. People*, 58 V.I. 569, 598 (2013) ("Before evaluating the trial court's application of the law, this Court must determine what law applies."). In its December 31, 2013 Complaint, Carlos Warehouse alleged that Thomas purchased merchandise from its store, failed to make payments, and still owes a balance. No claim, as such, was identified in the complaint. However, Carlos Warehouse captioned its case as being an action for debt and requested judgment in the amount Thomas owed plus costs. Carlos Warehouse did not seek damages. Clearly, the claim Carlos Warehouse stated was a claim for debt. And debt claims, like that Carlos Warehouse brought against Thomas, are governed by the common law. That is, while some actions to recover debt, such as those secured by a promissory note given in exchange for a mortgage on real property, are governed by statute, *see* 28 V.I.C. §§ 531, 536, no statute authorizes one person to sue another to recover money owed. When statutes are silent, the common law governs. *Cf. Simon v. Joseph*, 59 V.I. 611, 623 (2013) ("Since no statute sets forth the requirements for maintaining a legal malpractice action . . . we must determine which common law rule to adopt."); *accord Day v. United States*, 682 A.2d 1125, 1129 (D.C. 1996) ("[T]he common law . . . fill[s] in where statutes are silent."); *Austin Hill Country Realty, Inc. v. Palisades Plaza, Inc.*, 948 S.W.2d 293, 295 (Tex. 1997) ("Because there is no statute addressing this issue, we look to the common law."). However, no Virgin Islands precedent (binding or persuasive) explains what common law rule governs a claim for money owed. So, before applying a specific common law rule, the Magistrate Court should have first determined whether a claim for debt — and likewise whether payment as a defense to a debt claim — should be recognized under the common law of the Virgin Islands and then what

183

specific rules should apply. *See Gov't of the V.I. v. Connor*, 60 V.I. 597, 603 (2014) ("the Superior Court, when considering a question not foreclosed by prior precedent from th[e Supreme] Court, must perform a three-part analysis as set forth in *Banks* [*v. Int'l Rental & Leasing Corp.*, 55 V.I. 967 (2011)]."). In other words, the Magistrate Court should have conducted a *Banks* analysis.

■ The purpose of a *Banks* analysis — where common law claims and defenses not yet recognized in binding precedent is concerned — is first to determine whether the claim or defense should be recognized under Virgin Islands common law, and then how it should be recognized, meaning what specific rules should be adopted. *See Simon*, 59 V.I. at 622-23 ("the inherent and statutory authority to shape the common law of the Territory . . . includes determining the *existence* and elements of a common law cause of action . . . as well as when such an action accrues." (citations and footnote omitted) (emphasis added)); *see also Matthew v. Herman*, 56 V.I. 674, 684 (2012) (declining to recognize amatory torts under Virgin Islands common law); *cf. Machado v. Yacht Haven, USVI, LLC*, 61 V.I. 373, 385-86 (2014) (adopting elements of negligence claim and then rejecting common law distinction between invitees, licensees, and trespassers). Since a *Banks* analysis entails not only choosing what rule to apply, but also deciding whether the rule should apply at all, the Magistrate Court erred by not conducting this analysis in the first instance and instead assuming that Carlos Warehouse could bring a claim for debt and that Thomas could assert payment as a defense to that claim. *Accord Wild Orchid*, 62 V.I. at 253 ("Superior Court magistrates, like Superior Court judges, have the same obligations to determine and apply the correct law and — particularly in their capacity as the trial court in original jurisdiction cases — to shape the common law, which is amongst the most important powers vested in a judicial officer" (quotation marks and citation omitted)). However, because this question concerns what law should apply, this Court, as an appellate court, can decide the question on appeal, rather than remand this matter to the trial court. The parties agreed on the facts at issue, so remanding to the trial court to address the law in the first instance is not necessary. *But cf. id.* at 251-52 (declining on internal appeal to resolve questions of law because deciding what law governs could change what facts are relevant).

184

■ When deciding what the common law of the Virgin Islands should be, courts must

> first. . . ascertain whether any other local courts have considered the issue and rendered any reasoned decisions upon which litigants may have grown to rely . . . second . . . consider all potential sides of an issue by viewing the potentially different ways that other states and territories have resolved a particular question . . . [and] third . . . determine the appropriate common law rule based on the unique characteristics and needs of the Virgin Islands.

*Connor*, 60 V.I. at 603. Here, a *Banks* analysis is required to decide whether to recognize debt claims and payment as a defense, and also what rules apply to each. But, since defenses only apply when claims are viable, the Court will address first whether Virgin Islands common law should recognize a claim for debt and then whether our common law should recognize payment as a defense to a debt claim.

Considering the first *Banks* factor — the reasoned decisions of Virgin Islands courts — is not particularly helpful here because courts in the Virgin Islands have only mentioned debt actions in passing in *dicta. See, e.g., Deliver it v. Mitchell*, 28 V.I. 25, 27 (Terr. Ct. 1992) ("This case was filed in the Small Claims Division of the Court by Plaintiff on August 10, 1992, claiming Defendant was indebted to Plaintiff in the sum of $4,980.00."); *Schroeder v. Hackett*, 13 V.I. 242, 245 (Terr. Ct. 1977) ("This matter originated as a small claims action for debt."). No court in the Virgin Islands has ever discussed the common law origins of the debt action, what law governs a debt claim, or how a claim for debt is proven in court. Yet, despite this lack of precedent, the Court cannot ignore that the Legislature of the Virgin Islands established an entire division within the Superior Court to hear cases where the amount at issue is relatively small. *See* 4 V.I.C. § 111. And though the Legislature did not specify what type of claims could be pursued in the Small Claims Division — just that the Small Claims Division provides an "informal and summary" means for recovering claims of $10,000 or less, 4 V.I.C. § 112(a) — the Court also notes that many of the cases heard in the Small Claims Division concern one person's indebtedness to another.[3] And though Virgin Islands

---

[3] *See, e.g., Moore v. Walters*, 61 V.I. 502, 504 (2014) (small claims action to recover stolen money); *Peppertree Terrance v. Williams*, 52 V.I. 225, 227-29 (2009) (small claims action by

courts, including the Supreme Court, have not yet "considered the issue and rendered any reasoned decisions" regarding whether a claim for debt should be recognized under Virgin Islands common law, litigants have undoubtedly "grown to rely," *Connor*, 60 V.I. at 603, on being able to bring an action for debt in our courts. *See Schroeder*, 13 V.I. at 248 ("[T]he small claims court has been the small man's court in the Virgin Islands. It is where the man can go, give the clerk the information, and for two dollars the clerk fills out all the papers, defendant is brought before the court, there are no[] attorneys in court, there are no fees to be paid the attorneys, and the small businessman can get his judgment" (quoting legislative history of Act No. 3380)). And even though Virgin Islands courts have never squarely addressed this issue, a few of our cases have noted in *dicta* that debt claims sound in contract law. *See, e.g., Ryans Rest., Inc. v. Lewis*, 949 F. Supp. 380, 381-82, 35 V.I. 187 (D.V.I. App. Div. Dec. 23, 1996) (reversing and remanding "breach of contract matter" that was filed by complaint in the "Small Claims Division . . . in an action for debt."); *Schroeder*, 13 V.I. at 247 ("In its original form, the use of this [Small Claims] division was limited to contract actions in which the plaintiff was the original holder of the cause of action."); *accord Peppertree Terrance*, 52 V.I. at 237 (Swan, J., concurring) ("an action for debt [is brought] under an alleged breach of contract claim.").

This precedent is in accordance with the rule stated by courts in other jurisdictions, that an action to recover a debt is governed by contract law.

> The action of debt at common law was an appropriate remedy to enforce a bill or note, an account stated and obligations of record such as a judgment. The term debt was also considered at the common law as including those obligations upon which *indebitatus assumpsit* would

---

mobile home park against mobile home owner to recover unpaid fees for renting lot space); *Am. Furniture, Inc. v. Dazle-Petersen*, 290 F. Supp. 2d 607, 608-09 (D.V.I. App. Div. 1999) (small claims action by store against customer to recover amount of furniture purchased but unpaid due to stopped check); *Stevens v. Andrew Rogers Elec.*, 31 V.I. 172, 173 n.1 (D.V.I. App. Div. 1994) (small claims action for "services rendered"); *Wild Orchid*, 61 V.I. 242-43 (small claims action to recover remaining balance of services rendered and counterclaim for costs and reimbursements erroneously overpaid); *Ferris v. Withey*, SX-14-SM-038, 2014 V.I. LEXIS 48, at *3 (Super. Ct. App. Div. May 9, 2014) (unpublished) (small claims action by landlord against former tenant to recover unpaid rent); *First Express v. Frett*, ST-13-SM-051, 2013 V.I. LEXIS 85, at *1 (V.I. Super. Ct. Mar. 19, 2013) (unpublished) (small claims action to recover amount loaned by bank) ("This action for debt arose out of a loan that Micah A. Frett obtained from First Express.").

lie as for use and occupation, or for real property sold, or goods sold, or for personal services, or for money loaned, paid, had and received, or for interest, or for some other pre-existing debt on simple contract, incurred at the defendant's request. The term debt was also considered at common law as including a demand upon a *quantum meruit* for work, labor and materials furnished and upon a *quantum valebat* for goods sold and delivered. We think the idea of a debt is that it is founded on a contract, express or implied, to pay money in a certain sum or which can readily be reduced to a certainty as distinguished from a claim for damages arising out of a breach of contract or the violation of some duty.

*Norwich Pharm. Co. v. Barrett*, 205 A.D. 749, 752, 200 N.Y.S. 298 (1923); *see also Summers v. Hagen*, 852 P.2d 1165, 1170 (Alaska 1993) ("debt sounds in contract, not in tort, exemplary damages and damages for emotional distress are not authorized."); *Black v. Wills*, 758 S.W.2d 809, 814 (Tex. Ct. App. 1988) ("An 'action for debt' is a contract claim."); *In re Five Boroughs Mortgage Co.*, 176 B.R. 708, 712 (Bankr. E.D.N.Y. 1995) ("The debt is governed by the parties' contract and the contract is governed by state law."). But courts have also recognized that contract law is not the only law that governs debt claims. *See, e.g., Stockwell v. United States*, 80 U.S. (13 Wall.) 531, 542, 20 L. Ed. 491 (1871) ("Debt lies whenever a sum certain is due to the plaintiff, or a sum which can readily be reduced to a certainty — a sum requiring no future valuation to settle its amount. *It is not necessarily founded upon contract*. It is immaterial in what manner the obligation was incurred, or by what it is evidenced, if the sum owing is capable of being definitely ascertained." (emphasis added)); *Drennen Motor Car Co. v. Evans*, 192 Ala. 150, 68 So. 303, 304 (1915) ("Every right of action for which debt has been held to be an 'appropriate remedy' is not an action on the contract"); *Waxman v. Williamson*, 256 N.Y. 117, 175 N.E. 534, 535-36 (1931) ("It is well known that the early concept of debt was that *of a grant and not of a promise;* that the action of debt, to procure a return of the *res,* lay only for the recovery of a sum certain, the precise amount granted" (internal citations omitted) (emphasis added)). For example, a claim for debt can accrue when a statute is violated. *See, e.g., Wash. Gas & Light Co. v. Pub. Serv. Comm'n of D.C.*, 982 A.2d 691, 712 (D.C. 2009) (debt action for violation of statute) ("It was a well established proposition at common law that where a penalty is given by a statute, and no remedy for its recovery is

expressly given, debt lies." (quotation marks and footnote omitted)); *Miami Copper Co. v. State*, 17 Ariz. 179, 149 P. 758, 758-59 (1915) (debt action by state government against private corporation to recover fines for violation of statute). In fact, historically at common law the plaintiff could recover a debt either through an action of *assumpsit*, which sounded in contract law, or through an action of debt, which was its own action.

This area of the law is complicated in large part because it concerns the old forms of action that used to exist at common law, but which were abolished and replaced with one civil action for all types of claims. *See* 5 V.I.C. § 1. Some background is necessary to explain how the common law action of *assumpsit* developed and why it eventually eclipsed the action for debt.

> Although the common law action of Covenant was available for the breach of a contract under seal, the early common law recognized no cause of action for the breach of a simple contract. To fill a void that desperately needed filling, there gradually developed the form of action known as *Assumpsit*. It is Latin for he assumed or he undertook. The fuller form is *Indebitatus Assumpsit:* He assumed the debt; he undertook to pay the debt. . . . Early on, *Assumpsit* came to cover the case of an actual, though simple, contract, written or oral. . . . By a series of ingenious fictions it was held first, that *assumpsit* would lie where a debt existed and a promise to pay it could be inferred, as a fact, from the circumstances of the case; then that the promise would be implied by the law from the mere existence of a debt which the defendant ought to pay, although there was nothing to show that the promise was really made; and finally, that the law would imply both the debt and the promise whenever one had received or used something for which natural justice would require that he compensate another. . . .
>
> [T]he action of *Assumpsit* grew initially out of the action of Debt but ultimately . . . *Assumpsit* was a preferable action to Debt for various reasons, and plaintiffs began to allege that the defendant had owed a debt, and that, having owed it, he later undertook to pay it by an express promise to do so. This allegation allowed the plaintiff to prove the express promise, and if he could do so, he could maintain the action in *Assumpsit* rather than Debt. This came to be called *indebitatus assumpsit*. By 1692 . . . it was held that *Assumpsit* could be used in any

debt claim, whether the defendant had expressly undertaken to pay the debt or not, on the ground that every contract imports in itself an *assumpsit*. The undertaking to pay the debt created by the bargain was not necessarily express, but the bargain that led to the debt in the first place was.

. . . .

The common law forced the plaintiff to sue under one of a limited number of forms of action or writs. *Assumpsit* was a good choice, but to make it work it was necessary for judges to relate the claim to some kind of contract, promise or undertaking. The common law judges were up to the task. They simply said that, although the defendant had promised nothing, if justice called for relief, then the law would imply a promise and then hold him liable on that implied promise. . . . [W] the abandonment of the forms of the actions, what had originally been an action in general *Assumpsit* for a fictitious contract then took on its own identity as a case of quasi-contract or restitution. . . . With the disappearance of the form of action of *assumpsit*, the unblushing fiction of the implied promise has generally been discarded, and the remedy has acquired the name of quasi-contract, or restitution.

*Alternatives Unlimited, Inc. v. New Baltimore City Bd. of Sch. Comm'rs*, 155 Md. App. 415, 843 A.2d 252, 284-287 (2004) (some italics added) (citations, quotation marks, and emphasis omitted). But before courts expanded *assumpsit* to allow for debt claims, the debt action was the "proper remedy, where a determinate sum of money is due from one man to another." *Bullard v. Bell*, 4 F. Cas. 624, 628, F. Cas. No. 2121 (C.C.D.N.H. 1871) (No. 2,121).

Anciently it was held, that the plaintiff could not recover less than he demanded, and this . . . was the reason why the action of *assumpsit* was resorted to in preference. . . . But as now a plaintiff in an action of debt can recover according to the sum due, though less than the sum demanded . . . there seems to be no reason, why the action of debt should not as well lie, as the action of *assumpsit* . . . . The same debt which will support an *assumpsit*, will also support an action without the fiction of an *assumpsit*. . . . The question then seems to be . . . what are the properties which are common to both actions, and what belong exclusively to each. To support the action of debt, it is necessary that there should

189

be a determinate sum of money due from one person to another. This sum must be determinate in itself, or capable of being determined by an averment. This debt may be created by the act of the parties, or by the act of law. It is created by the act of the parties, in cases of contract; and by the act of law, when founded on the provisions of statutes. The action of *assumpsit* is founded upon a promise express or implied. In *assumpsit* the action rests entirely upon the promise. In debt it is founded entirely upon a sum of money due. It is apparent, that there may be cases, where there is an express promise, which will support an action of debt; as by the payee against the maker of a promissory note for a determinate sum. There are also cases, where there is no express promise, but there being a determinate sum of money due, the law will imply a promise to pay the same, which implication of the law will be sufficient to support a declaration in *assumpsit*. In these cases debt or *assumpsit* will lie. But where there is a promise broken, but no determinate sum of money due in consequence of the promise, there debt will not lie, but *assumpsit* only, there being no determinate debt, until fixed by a verdict and judgment.

*Id.* (citations omitted) (some italics added).

This background shows that historically at common law a plaintiff could recover a debt either through an action for debt or through an action in *assumpsit* under a quasi-contract theory. *See Thompson v. French*, 18 Tenn. 452, 453-54 (1837) ("That the actions of debt and *indebitatus assumpsit* are *concurrent remedies* in cases of simple contracts for the payment of money, either express or implied, has been so repeatedly held, that it is deemed unnecessary to enter into an examination of the authorities in support of the proposition" (second emphasis added)); *Miami Copper Co.*, 149 P. at 761-62 ("At common law *debt would lie* to recover money due upon simple contract, express or implied, whether verbal or written, and upon contracts under seal, or of record." (emphasis added)). It also highlights why the debt action fell into disuse. The plaintiff had to recover the exact same amount demanded, no more and no less. So here, for example, Carlos Warehouse's complaint would have been dismissed under this ancient common law because the complaint demanded $897, but then Leonce clarified in court that only $507 was due.

Even though the action in *assumpsit* evolved to avoid these harsh formalities, it did not come without its own problems, particularly when

courts must pretend that a claim for debt is really a kind of contract. *See Alternatives Unlimited*, 843 A.2d at 288-89 ("American courts commonly describe the issue in a case as one of determining whether the circumstances are proper for implying a contract, and one cannot always be sure that the court is fully aware of the fundamental difference between a contract implied in fact and a contract implied in law. It would be of some help if the latter phrase could be wholly eliminated from the legal vocabulary, but its substitute, quasi contract, seems certain to remain with us and even this can be a source of confusion" (citation, quotation marks, and emphasis omitted)); *see also Foshee v. Gen. Tele. Co.*, 322 So. 2d 715, 717 (Ala. 1975) ("The essence of the theories of unjust enrichment or money had and received is that facts can be proved which show that defendant holds money which in equity and good conscience belongs to plaintiff or was improperly paid to the defendant because of mistake or fraud. The essence of the cause of action for debt is that facts can be proved which shows the defendant is obligated to pay the complaint a liquidated sum of money" (citations omitted)). While the formal action for debt has long been discarded, it does not follow that the simple debt claim was also discarded. *Cf. Philpott v. Super. Ct. of Los Angeles Cty*, 1 Cal. 2d 512, 36 P.2d 635, 637 (1934) ("[L]egislatures in establishing the simplified code pleading and in thus abolishing the *forms* of common-law actions did not destroy, and even if it had desired could not destroy, the essential *characteristics* of those actions so long as the common law remains the basis of our jurisprudence." (quotation marks and citation omitted)). And it also does not follow that debt can only be recovered now through a quasi-contract action, especially when such actions require proving all of the elements of a breach of contract — an offer, acceptance of the offer, agreement of the parties, and consideration.[4]

---

[4] *See* I Joseph Chitty, *A Practical Treatise on Pleading: And on the Parties to Actions, and the Forms of Actions* 99-100 (1809) ("The declaration [or complaint] in this [*assumpsit*] action must invariably disclose the *consideration* upon which the contract was founded; the *contract itself*, whether express or implied, and the *breach thereof*, and *damages* should be laid sufficient to cover the real amount. The most general plea is non assumpsit, that the defendant did not undertake and promise, as alleged by the plaintiff, and under which the defendant may give in evidence most matters of defence [sic]." (emphasis added) (footnotes omitted)); *accord Alternatives Unlimited*, 843 A.2d at 289 ("An implied-in-fact contract *is a true contract* and means that the parties had a contract that can be seen in their conduct rather than in an explicit set of words. *Implied-in-fact contracts are dependent on mutual*

■ After considering all three *Banks* factors, this Court agrees with the majority of other jurisdictions and holds that it is "unquestionably the soundest rule for the Virgin Islands." *Machado*, 61 V.I. at 380, to recognize a claim for debt. For centuries people have turned to their courts for help to recover money owed from another. To not recognize a claim for debt would be to shut the doors of the courts of the Virgin Islands, especially the doors of the "small man's court." *Schroeder*, 13 V.I. at 248 (citation omitted). But the Court does not agree that it is the soundest rule for the Virgin Islands to impose all of the requirements of contract claims onto the simple debt claim, especially when the amount due is known or easily determined and damages are typically unavailable. *See Newman v. Lemmon*, 149 S.C. 417, 147 S.E. 439, 441 (1929) (" 'Debt' does not mean damages and an action to recover damages is not an action to recover debt."); *see also* George L. Phillips, *An Exposition of the Principles of Pleading Under the Codes of Civil Procedure* § 93 (1896) ("This action [for debt] is so called because it . . . is the *duty* of the defendant to pay; and not his *promise* to pay. . . . Debt will lie for money lent, for money had and received, for money due on an account stated, for work and labor, for the price of goods, for use and occupation . . . . It is the proper remedy in general, where the demand is for a liquidated and certain sum, and is not for damages."). It is more sound — particularly in informal and summary cases where the parties must represent themselves — to simplify this area of the law for "cases where there was neither a promise in specific words nor one inferred from the facts." *Restatement (First) of Restitution* scope preceding § 1 (1937).

■ To state a common law claim for debt under Virgin Islands law, the plaintiff must allege that the defendant owes a certain amount and that the defendant is or should be obligated to pay that amount. Damages are ordinarily not available. *See* 1 Joseph Chitty, *A Practical Treatise on Pleading: And on the Parties to Actions, and the Forms of Actions* 100

---

*agreement or consent, and on the intention of the parties; and a meeting of the minds is required.*" (internal quotation marks, citations, and emphasis omitted); *see also id.* at 290 ("A quasi-contract or implied in law contract, on the other hand, involves *no assent between the parties, no meeting of the minds.* Instead *the law implies a promise* on the part of the defendant to pay a particular debt. Thus, the *implied in law contract is indeed no contract at all*, it is simply a rule of law that requires restitution to the plaintiff of something that came into defendant's hands but belongs to the plaintiff in some sense." (quotation marks and citation omitted)).

192

(1809) ("[T]hough damages are in general awarded for the detention of the debt, yet in most instances they are merely nominal, and are not, *as in* assumpsit *and covenant*, the principal object of the suit." (emphasis added). The trial court need only find then that "there existed a debt which the defendant ought to pay." *Restatement (First) of Restitution* scope preceding § 1; *accord Wash. Gas & Light Co.*, 982 A.2d at 713 ("To recover the debt, a plaintiff must prove that it exists."); *Drennen Motor Car Co.*, 68 So. at 304 ("The general distinguishing features of the action of debt are: (1) That it lies only for the recovery of a sum certain, or readily reducible to a certainty from fixed data or agreement, or by operation of law; (2) that it lies on an obligation that is payable in money only."); *Technicorp Int'l II v. Johnston*, C.A. No. 5084, 1997 Del. Ch. LEXIS 126, at \*56-57 (Del. Chancery Ct. Aug. 22, 1997) (unpublished) (the "elements of the debt claim" include "the existence of the loans, their terms, and the failure of the defendants to repay them"); *cf. Anthony v. FirstBank V.I.*, 58 V.I. 224, 232 ("In order to prevail on a foreclosure claim, the plaintiff must show (1) the debtor executed a promissory note and mortgage, (2) the debtor is in default under the terms of the note and mortgage, and (3) the lender is authorized to foreclose on the property mortgaged as security for the note." (citation and quotation marks omitted)). Simplifying the common law debt claim still allows courts to inquire into whether the debt is proper,[5] and further allows the defendant to raise any relevant affirmative defense. Under this law, Carlos Warehouse adequately stated a claim for debt against Thomas.[6]

---

[5] *See, e.g., Kelly v. First Astri Corp.*, 72 Cal. App. 4th 462, 84 Cal. Rptr. 2d 810, 819-20 (1999) (public policy barred action to recover gambling debt); *Ascencio*, 2013 V.I. LEXIS 74 at \*\*11-12 (judgment reversed in part for failure to consider whether interest assessed and awarded complied with Virgin Islands usury laws); *cf.* 12A V.I.C. § 252 ("A consumer contract . . . shall be written in clear, simple, understandable and easily readable language."); *id.* § 251(a) (defining "consumer contract" as "a written agreement in which a natural person . . . obtains credit . . . borrows money . . . [or] purchases personal property").

[6] Notably, this case did not involve a claim for "work and labor done (*quantum meruit*)" or "goods sold and delivered (*quantum valebat*)" where the value of the labor or the value of the goods is uncertain. *Alternatives Unlimited*, 843 A.2d at 290. Such claims do sound in quasi-contract law because the finder of fact must determine what the parties agreed to or whether to imply an agreement to avoid unjustly enriching the defendant at the expense of the plaintiff. *Accord Cacciamani & Rover Corp. v. Banco Popular de P.R.*, 61 V.I. 247, 254 (2014) ("This situation is the very purpose of an unjust enrichment action: an action initiated by a plaintiff to recover payment for labor performed in a variety of circumstances in which that

193

Turning then to Thomas's defense, here too the Magistrate Court erred by not addressing whether Virgin Islands law recognizes affirmative defenses to debt claims. The defense Thomas raised was payment and payment is an affirmative defense that, like most affirmative defenses, is derived from the common law. *See St. Thomas-St. John Bd. of Elec. v. Daniel*, 49 V.I. 322, 330 n.9 (2007) ("affirmative defenses . . . derive from the common law plea by way of confession and avoidance" (internal quotation marks and citations omitted)). Whether Virgin Islands common law should recognize payment as a defense to a debt claim is the next question to answer. *Cf. Der Weer v. Hess Oil V.I. Corp.*, 64 V.I. 107, 139 (V.I. Super. Ct. 2016) ("no court in the Virgin Islands has considered yet whether release — or any other common law affirmative defense — should be recognized under Virgin Islands common law.").

As with the analysis for debt claims, examining the law Virgin Islands courts applied in the past is also unhelpful here because only one reported decision touched on whether payment is a defense to a debt claim. *See generally American Furniture, Inc.*, 290 F. Supp. 2d 607. There, American Furniture brought suit against Christine Dazle-Petersen to recover $1,299.00, the cost of furniture she bought with a personal check. *Id.* at 608. Dazle-Petersen had put a stop on the check when she noticed damaged and missing parts after the future was delivered. *Id.* When American Furniture tried to cash the check, it was dishonored and returned. *Id.* Dazle-Petersen and American Furniture discussed for a few months "whether she would pay for the bedroom set and whether American Furniture would repair it." *Id.* Ultimately, American Furniture sued Dazle-Petersen in the Small Claims Division of the former Territorial Court to recover the amount of the furniture. *Id.* But at trial Dazle-Petersen testified that she had already given an American Furniture employee cash for the furniture sometime before the complaint was filed. *Id.* Although she said she lost the receipt the employee gave her, two witnesses corroborated her testimony. *Id.* A representative from the furniture store denied that the debt was paid. *Id.* The trial court credited the defense's testimony and dismissed the plaintiff's case. *Id.* On appeal, the Appellate Division of the District Court of the Virgin Islands affirmed,

plaintiff, for some reason, would not be able to sue on an express contract." (citation and quotation marks omitted)); *see also Maso v. Morales*, 57 V.I. 627, 634 n.9 (2012) ("There can be no unjust enrichment where the person enriched is legally entitled to the enrichment.").

recognizing that "payment provides . . . a defense . . . and extinguishes the underlying debt." *Id.* at 609. Although the court stated this principle without any analysis or discussion — which reduces its reliability, *see Connor*, 60 V.I. at 602 — this precedent nonetheless corresponds to the common law rule recognized around the country.

Nearly every jurisdiction has held that payment is an affirmative defense to a debt claim. *See, e.g., Bell v. Grimstad*, 82 Mont. 185, 266 P. 394, 397 (1928) ("the rule appears to be universal that where the defense is payment, the burden rests upon the defendant to establish it by competent evidence.") (collecting cases and treatises); *see also Forest v. Davis*, 20 Misc. 1, 3, 44 N.Y.S. 907 (1897) ("The defense is payment. This is an affirmative defense and the burden is upon the defendants to prove the same by a fair preponderance of evidence."); *Hughes v. Wachter*, 238 N.W. 776, 782 (N.D. 1931) ("where a plaintiff sues for a balance, alleging certain payments and no others have been made he empowers the defendant by a general denial to have that state of the account investigated, the extent to which the original payment has been reduced by payments ascertained, and the amount of the balance determined." (citing *Brown v. Forbes*, 43 N.W. 93 (Dakota Terr. 1889)); 70 C.J.S. 2d *Payment* § 69 (2005) ("As a general rule, payment is an affirmative defense which must be specially pleaded in order to obtain the benefit of such defense."). Courts sometimes differ on how payment impacts a particular debt claim. *Compare, e.g., Bronn v. Soules*, 140 Ore. 308, 13 P.2d 623, 623 (1932) (reversing in part judgment that accepted defense of partial payment for defendants who had appeared but rejected defense for defendants who defaulted) ("The defense set up by the answering defendants was part payment, and this was not a defense personal to themselves but was as applicable to the nonanswering defendants as it was to those who had answered."), *with Columbus Mining Co. v. Combs*, 233 Ky. 476, 26 S.W.2d 26, 28 (1930) (checks cashed by son-in-law but issued to father-in-law dead for over nine years were not recognized as a defense in action to recover royalties) ("[I]t is sufficient to say that one who pays to a person who is dead, or who is not entitled to receive the money, does so at his peril, and such payment is not a defense against one entitled to the money and to whom the payment should have been made."), *and Hobgood v. Sylvester*, 242 Ore. 162, 408 P.2d 925, 927 (1965) ("Even payment is no defense against a holder in due course, and a maker of a negotiable instrument who pays the

195

original payee all or part of the debt evidenced thereby may be compelled by a holder in due course to pay again."). Additionally, each jurisdiction's rules of procedure determine when and how the defense applies. *See Melone v. Ruffino*, 129 Cal. 514, 62 P. 93, 94 (1900) ("The principle that he who alleges himself to be the creditor of another is obliged to prove the fact of agreement upon which his claim is founded, when it is contested; and that, on the other hand, when the obligation is proved, the debtor who alleges that he has discharged it is obliged to prove the payment, is clearly one of those propositions in which every system of jurisprudence must concur in general, whatever particular rules may be adopted, as to the mode and form of the allegations, by which the necessity of such proof is to be determined." (citation and quotation marks omitted)). But nearly every court recognizes payment as a defense to a debt claim, including partial payment when less than the entire amount remains to be paid or when multiple persons are responsible for the same debt. *See, e.g., A.D.E., Inc. v. Louis Joliet Bank & Trust Co.*, 742 F.2d 395, 397 (7th Cir. 1984) ("part payment is an affirmative defense"); *Bronn*, 13 P.2d at 623.

 Having "weigh[ed] all persuasive authority both within and outside the Virgin Islands," *Connor*, 60 V.I. at 603, this Court holds that recognizing payment as an affirmative defense to a debt action is clearly the soundest rule for the Virgin Islands. For the same reason that maintaining a claim for debt is sound, so too is maintaining payment as an affirmative defense to this claim. Not recognizing payment as a defense would discourage businesses and individuals from borrowing on credit if creditors could sue for and recover the entire amount loaned even though the debt had been paid in full or partially reduced by payments. And if proof of having satisfied a debt could never be admitted in court to defeat a debt claim, debtors would be reluctant to pay until ordered by a court. Similarly, banks and other lenders would be disinclined to loan money if, to guarantee repayment, they always had to bring an action in court. Unquestionably, maintaining this affirmative defense as part of the common law of the Virgin Islands is sound.

 Although the Magistrate Court failed to conduct a *Banks* analysis[7] to determine whether Virgin Islands common law recognizes a claim for debt and also whether it recognizes payment as a defense to a

---

[7] Although it may not be possible to conduct a thorough *Banks* analysis before trial, particularly in cases that should be heard summarily, informally, and without unnecessary delay,

debt claim, the error was harmless error here. Carlos Warehouse adequately stated a claim for debt and Thomas properly raised payment as an affirmative defense. However, because no evidence was admitted during the March 4, 2014 proceeding, the question now becomes whether it was reversible error for the Magistrate Court to issue a decision on the merits when no evidence was admitted and the parties were not sworn.

As noted above, neither Leonce nor Thomas submitted any documents to the trial court. Although the record of proceedings prepared by the court clerk does refer to what the parties "testified" to and what "proof" they submitted, (*see* R. of Proc. 2, entered Mar. 4, 2014), it does not indicate whether Thomas or Leonce were sworn. That is, the clerk did not check either yes or no in the section labeled "Witness Sworn." *Id.* at I. Similarly, the transcript does not reflect that any documents were admitted or that the documents Thomas handed to the court were marked, moved, or admitted into evidence. There is no exhibit list among the papers in the case file or entered on the docket. And the transcript too does not reflect that either Leonce or Thomas was sworn. So, while the record on review is at best uncertain, the certified transcript prepared by the court reporter must control over any uncertainties in the record, whether in the clerk's notes or the court's order. *See* SUPER. CT. R. 322.1(h)(1)-(2)(A); *accord In re M.R. & W.V.*, 64 V.I. 333, 346 (V.I. 2016) ("[I]t is the transcript of a hearing prepared by the court reporter, and not the judge's *post hoc* personal recollections of the hearing, that constitutes the record on appeal.").

█ Since the transcript does not show that documents were admitted or that the parties were sworn, the reference in the March 4, 2014 Order (and the March 4, 2014 Record of Proceedings) to what the evidence showed is clearly erroneous. There simply is no basis in the record to support this conclusion. It follows then — if no documents were admitted and neither party gave sworn testimony — that the March 4, 2014 proceeding was not a trial. Superior Court Rule 64 directs that "[t]he parties and witnesses shall be sworn" before "the trial of any case" and

---

nothing precludes the court from raising relevant legal issues on the record before hearing from the parties and then taking such legal questions under advisement and resolving them later by opinion and order. Courts in the Small Claims Division are not "bound by the statutory provisions or rules of practice, procedure, pleadings, or evidence," but they are bound to "conduct the trial . . . according to the rules of substantive law." SUPER. CT. R. 64.

that did not happen. But the Small Claims Division can hold hearings. Although multiple court appearances in small claims cases are discouraged, *see* SUPER. CT. R. 63 (directing that trial should occur between five and fifteen days after the defendant is served), a hearing is required "[i]mmediately prior to the trial of any case." SUPER. CT. R. 64 The court must "elicit from the defendant, a statement as to the nature of the defense" and then "make an earnest effort to settle the controversy" before "proceed[ing] with the hearing on the merits." SUPER. CT. R. 64. And that is what happened here.

Before proceeding with the trial, the Magistrate Court asked Leonce if Thomas and Carlos Warehouse had reached an agreement on the amount owed. Leonce told the court that Thomas agreed on the amount, but not on paying the costs. When the court asked Thomas if she "owe[d] Carlos Warehouse the sum $507," Thomas answered, "Yes." (Hr'g Tr. 4:7-9.) But for furniture purchased in 2011, not in 2006, she explained. She had "finished paying . . . a long time ago" for the furniture listed on the documents attached to the complaint. (Hr'g Tr. 5:4.) This exchange reveals that the court complied with Superior Court Rule 64 by trying to settle the case and by eliciting Thomas's defenses before proceeding to trial.[8] However, the court erred by not swearing the parties before issuing a decision on the merits.

█ The Small Claims Division provides "informal and summary" proceedings to recover claims of $10,000 or less. 4 V.I.C. § 111. But the informal and summary nature of small claims cases must still be "consistent with justice." *Id.* And justice requires that the witnesses and parties be sworn before being heard on the merits. *See* SUPER. CT. R. 64

---

[8] Superior Court Rule 64 does not specify whether the court should attempt to settle the dispute before eliciting defenses or whether defenses should be elicited first. The question is not raised here, but the Court nonetheless notes a concern because parties appear without counsel in the Small Claims Division, *see* 4 V.I.C. § 112(d), and because many defenses are deemed waived if not raised at the earliest opportunity. *See Rennie v. Hess Oil V.I. Corp.*, 62 V.I. 529, 536-37 (2015). In this case, for example, if the court had successfully gotten the parties to settle based on the 2006 debt before eliciting Thomas's defenses, Thomas could have lost the statute of limitations defense on debt actions. *But cf. Mercer v. Islander Taxi Serv., Inc.*, ST-09-SM-345, 2010 V.I. LEXIS 118, at **8-9 (V.I. Super. Ct. App. Div. Mar. 25, 2010) (unpublished) (citing 5 V.I.C. § 40 and finding that the statute of limitations restarts from the date of the last payment). Therefore, the more prudent course in the Small Claims Division, so as "to do substantial justice between the parties," SUPER CT. R. 64, may be to elicit any defenses before attempting to settle the controversy.

("The parties and the witnesses shall be sworn."); *accord* FED. R. EVID. 603 (2010 ed.) ("Before testifying, every witness shall be required to declare that the witness will testify truthfully, by oath or affirmation administered in a form calculated to awaken the witness' conscience and impress the witness' mind with the duty to do so.").[9] The Supreme Court of the Virgin Islands has not addressed yet whether basing a decision in a civil case on unsworn statements from the parties is reversible error. Courts in other jurisdictions are divided on the question.[10] Since the requirement to swear parties and witnesses in the Small Claims Division is imposed by court rule and not by statute,[11] it can be waived or forfeited if no objection is raised. *Cf. Langford v. United States*, 4 Indian Terr. 567, 76 S.W. 111, 112 (1903) ("On the one hand, we are confronted by the proposition, which has been embodied in all law from time immemorial, that a witness must be sworn (or affirmed) before he is competent to testify; and, on the other hand, by the principle, as firmly established, that a party must make timely objection to proceedings which are erroneous, else he will be deemed to have waived them."); *Sewall v. Spinney Creek*

---

[9] The Federal Rules of Evidence became the Virgin Islands' Rules of Evidence with the passage of Act 7161 in 2010. *See generally* Act No. 7161, § 15(a), 2010 V.I. Sess. L. 50 (Apr. 7, 2010); *see also Mendez v. Gov't of the V.I.*, 56 V.I. 194, 205 n.6 (2012). The 2010 version of the rule is quoted above "out of an abundance of caution." *People v. Ventura*, SX-12-CR-076, 2014 V.I. LEXIS 53, at *26 n.4 (V.I. Super. Ct. July 25, 2014) (unpublished).

[10] *Compare State v. Pilkey*, 776 S.W.2d 943, 952 (Tenn. 1989) ("failure to administer an oath to a witness is a matter which can be waived or which can amount to harmless error under various circumstances."); *In re Simmonds Children*, 177 S.E.2d 19, 23-24 (W. Va. 1970) ("It is generally required that witnesses be sworn before they are permitted to testify. This is necessary in informal proceedings such as juvenile cases. However, the admission of unsworn testimony is a mere irregularity and not a jurisdictional defect, and a party should object at the proper time in order to have the witness sworn and such irregularity may be waived by the failure to object." (internal citation omitted)), *with Napiearlski v. Pickering*, 278 A.D. 456, 106 N.Y.S.2d 28, 29 (1951) ("There is no authority, in civil actions, for receiving unsworn statements of witnesses as evidence. . . . We are of opinion that, although no objection was made by either side, the verdicts for the plaintiffs may not be sustained upon this unsworn testimony."). *See also Sewall v. Spinney Creek Oyster Co.*, 421 A.2d 36, 39 (Me. 1980) ("Some authorities have questioned the value of the oath" while other "courts have gone so far as to deem the swearing of witnesses in particular contexts to be a constitutional requirement, as a component of constitutional due process of law.").

[11] Because Superior Court Rule 64 and Virgin Islands Rule of Evidence 603 impose the same oath requirement, the Court notes, but need not resolve, whether Act 7161 by statute requires that the rules of evidence govern now in the Small Claims Division, despite Superior Court Rule 64 which directs the contrary, that in small claims cases courts "shall not be bound by the statutory provisions or rules of . . . evidence."

*Oyster Co.*, 421 A.2d 36, 39 (Me. 1980) ("[T]he swearing of witnesses may be relinquished through a genuine act of waiver, or may be forfeited by procedural default."). But most courts are unwilling to find forfeiture — since waiver requires an "affirmative act," *Pickering v. People*, 64 V.I. 356, 365 (V.I. 2016) — "[w]hen a party is not aware . . . of the requirement to swear witnesses, as for example when a party is not represented by counsel." *Sewall*, 421 A.2d at 39.

 Here, the transcript does not show that Leonce and Thomas affirmatively waived the right to be sworn or that either objected during the hearing. If counsel had represented them at the hearing, the Court could conclude that they forfeited the right to object. But parties in the Small Claims Division must appear without counsel. *See* 4 V.I.C. § 112(d). So, the Court must presume that neither Leonce nor Thomas knew that they had to be placed under oath. The failure to swear the parties is understandable here since the hearing began with general background questions. But once the substance of the hearing turned to the merits of Carlos Warehouse's claim and Thomas's defense, the Magistrate Court should have placed the parties under oath. "[T]he general value and purposes of the oath requirement are well known, i.e., to bind the conscience of the witness and make him amenable to prosecution if he gives perjured testimony." *Sewall*, 421 A.2d at 39 (quotation marks and citation omitted); *see also People v. de Jongh*, 64 V.I. 53, 69 (Super. Ct. 2016) ("The importance of the oath in judicial proceedings cannot be overestimated, the judge on the bench, the jury in the box, the attorneys at the counsel table, the witness on the stand, the court stenographer taking a record of the proceedings, and even the bailiffs when they retire to guard the jury in its deliberations, are all sworn to do their respective duties before they are permitted to act." (quotation marks and citation omitted)). Not swearing the parties was in error. *See* SUPER. CT. R. 64.

 However, on the present record, the Court finds the error harmless and not reversible. *See* 98 C.J.S. 2d *Witnesses* § 446 (2013) ("The admission of unsworn testimony in a case may be an error or, under some circumstances, merely a harmless error."). Thomas and Leonce were in full agreement. Both agreed that Thomas had fully paid for the furniture she bought in 2006. They also agreed that Thomas still owed for the furniture bought in 2011. So, it is clear on this record that the testimony would be the same even if the Court vacated the dismissal and remanded for parties to testify under oath at a new trial. *Cf. Hansen v. O'Reilly*,

62 V.I. 494, 510-11 (2015) ("declaring all Superior Court proceedings . . . a nullity, and in effect directing the Superior Court to hold a new trial and issue a new decision . . . would serve absolutely no purpose other than additional expense and delay, since almost certainly the parties would produce the same evidence and the Superior Court would issue the same decision based on that evidence."); *Harvey v. Christopher*, 55 V.I. 565, 569 n.2 (2011) (overlooking "technical error" because "vacating the December 23, 2009 Order and remanding the matter for a new hearing would bring about the same result and serve no purpose other than additional delay and expense."). Therefore, failing to swear Leonce or Thomas was harmless and does not require reversal.

■ Yet, even though not deciding what law governed and not placing the parties under oath does not require reversal in this case, ultimately it is the last issue that does. Carlos Warehouse is correct that the Magistrate Court erred by dismissing its complaint with prejudice, but not because Thomas still owes for the 2006 purchase or because she should have paid the costs. Rather, the court's error was in not permitting Carlos Warehouse to amend its complaint or deeming the complaint amended *sua sponte*. Superior Court Rule 8 directs that "[t]he court may amend any . . . pleading for any omission or defect therein, or for any variance between the complaint and the evidence adduced at trial."[12] The Magistrate Court correctly recognized that the documents Carlos Warehouse had attached to its complaint referred to purchases Thomas made in 2006. So it is understandable why the court concluded that purchases Thomas made in 2011 were "a completely separate transaction" and not before the court. (Hr'g Tr. 7:19.) But other defects with the complaint were raised, which the court was willing to accept. When the hearing began, Leonce explained that there was a mistake in the complaint. The complaint alleged that Thomas owed $897 whereas it should have alleged that Thomas owed $507. This was a defect that could have been cured by amendment per Superior Court Rule 8. Similarly, both parties' statements (if they had been sworn) would have been evidence that would have been at variance with the complaint. No one disputed that the 2006 purchase had been paid for. No one disputed that Thomas owed

---

[12] Superior Court Rule 8 applies in the Small Claims Division pursuant to Superior Court Rule 69, which allows the Superior Court's general rules to apply when the rules specific to small claims cases are silent.

$507 for her 2011 purchase. So, allowing the complaint to be amended so that it stated a claim for debt in the amount of $507 for the purchase Thomas made in 2011 would have been in conformity with the "evidence" and would have eliminated any variance. Superior Court Rule 62(c) directs that "[a]ll pleadings" in the Small Claims Division "shall be so construed as to do substantial justice." Read in conjunction with the permissive amendment provisions of Superior Court Rule 8 — and in harmony with the goal in Superior Court Rule 1 of "simplicity and uniformity in procedure, fairness in administration and the elimination of unjustifiable expense and delay," SUPER. CT. R. 1(a) — compels the conclusion that the court should have permitted Carlos Warehouse to amend its complaint to remove the references to Thomas's 2006 purchases or instead deemed the complaint amended *sua sponte*. The Magistrate Court erred by construing the complaint too narrowly and limiting it to Thomas's 2006 purchases.

The remaining question is whether to "affirm, reverse, modify, or remand, in whole or in part." SUPER. CT. R. 322.3(c). The dismissal with prejudice cannot be affirmed. Even if Carlos Warehouse's debt claim had been based on Thomas's 2006 purchases, dismissing it with prejudice was not proper.[13] And even though the court technically did not hold a trial, it still reached a decision on the merits, so the court should have issued a judgment — albeit for Thomas if the complaint had in fact been limited to the 2006 debt. *See* 49 C.J.S. 2d *Judgments* § 130 (2009) ("A dismissal based on findings of fact, made contrary to plaintiff's allegations, is a judgment on the merits."); *see also Cape Air Int'l v. Lindsey*, 53 V.I. 604, 622 (2010) (reversing and remanding small claims

---

[13] A dismissal with prejudice might have been proper if Carlos Warehouse and Thomas had agreed in court to settle their case. *See*, *e.g.*, *Mensing v. Sturgeon*, 250 Iowa 918, 97 N.W.2d 145, 148 (1959) ("The universal rule is that a dismissal with prejudice is ordinarily an adjudication on the merits. Many authorities have so held. . . . Where the parties to an action have settled their dispute and agreed to a dismissal such dismissal is a *retraxit* and amounts to a decision upon the merits." (quotation marks and citations omitted)); *see also Rice v. Crow*, 81 Cal. App. 4th 725, 97 Cal. Rptr. 2d 110, 115 (2000) ("The doctrine of *retraxit* finds it roots in the common law. At common law, a *retraxit* was an open and voluntary renunciation of the suit in open court. The primary features of a common law *retraxit* were that it was made by the plaintiff in person and in open court. A dismissal with prejudice is the modern name for a common law *retraxit*. A *retraxit* is a judgment on the merits preventing a subsequent action on the dismissed claim." (internal citations and quotation marks omitted)). But the record is clear that Carlos Warehouse did not agree to dismiss its case against Thomas, a point further shown by this appeal.

appeal for entry of judgment for defendant/appellant); *Julien v. Mims*, SX-12-SM-300, 2015 V.I. LEXIS 92, at *25 (V.I. Super. Ct. App. Div. Aug. 4, 2015) (unpublished) ("Once a party's claims are heard and considered on the merits . . . a judgment must be entered."); SUPER. CT. R. 65 ("*Judgment* shall be entered at the time of entry of *findings* by the judge unless stayed" (emphasis added)). But here, judgment should have issued for Carlos Warehouse. The parties were in agreement that Thomas owed Carlos Warehouse $507 as of the date they appeared in court. Even though it was Thomas who alerted the court to Carlos Warehouse's mistake, Carlos Warehouse should not have to bring a second action and incur additional costs (and for Thomas have to come back to court on a second case). The parties understood that the debt Carlos Warehouse sued Thomas for was incurred in 2011, not 2006. So, the March 4, 2014 Order must be vacated and this matter remanded for further proceedings

On remand, the Magistrate Court can enter judgment in favor of Carlos Warehouse for the amount the parties agreed on or, if appropriate, permit the parties to inform the court — either by sworn statement or in person under oath — as to the status of Carlos Warehouse's claim and how much Thomas still owes. Thomas represented in her brief on appeal that she brought the balance down since trial. But since this is a factual issue, that this Court cannot consider in deciding this appeal. *See Estate of Small*, 57 V.I. at 429-30.

## CONCLUSION

The Magistrate Court erred in dismissing with prejudice a claim for debt based on an affirmative defense, without conducting a *Banks* analysis first to decide whether Virgin Islands common law should recognize the claim or the defense. However, because appellate courts do not defer to the law the trial court applies this Court, in its appellate capacity, performed the *Banks* analysis in the first instance on review and concludes that recognizing a claim for debt and recognizing payment as an affirmative defense to a debt claim is sound for the Virgin Islands. Not conducting this analysis in the first instance is harmless here because Carlos Warehouse properly stated a debt claim and Thomas properly raised payment as an affirmative defense. Additionally, while it was also error to allow both parties to make statements without being sworn, the Court concludes that, on this record, the error is harmless and not reversible. Carlos Warehouse's representative did not dispute Thomas's

statements and in fact agreed that she no longer owed for her 2006 purchases. And it was Thomas who stated that what she owed for was a debt incurred in 2011. The Magistrate Court should have allowed Carlos Warehouse to amend its complaint or deemed it amended *sua sponte* to conform to the parties' representations.

On the basis of the foregoing, it is hereby

ORDERED that the March 4, 2014 Order is VACATED and this matter is REMANDED to the Magistrate Division for further proceedings consistent with this Opinion and that a copy of this Order be served on both parties, FORTHWITH, by Superior Court marshal.